stood together on the adjacent corner, conversing, and again entered said bank,—these occurrences occupying about one hour. A police officer, regarding their conduct as suspicious, placed the accused persons under arrest, and the question is whether the circumstances stated are sufficient to warrant the holding of the prisoners under the statute referred to, which provides that "a person who, under circumstances or in a manner not amounting to a burglary, enters a building, or any part thereof, with intent to commit a felony or a larceny * * * is guilty of a misdemeanor." In addition to the circumstances stated, the fact is clearly sworn to that the prisoners are professional thieves, and that their pictures are in the rogues' gallery at police headquarters. In order to convict under this section, no forcible entry is required. The entry, no matter how peaceable, if "with intent to commit a felony or a larceny," is a misdemeanor. The intent essential must, in the nature of things, be determined from the facts and circumstances, and these are for the consideration of a jury. The facts that four professional thieves, acting in concert, enter a bank in this city, having no business calling them to the bank; that they frequently go in and come out from said bank, and that they converse together on the adjacent corner,—point to an intent to commit a felony or a larceny, and, unexplained, are sufficient to warrant a conviction. The prisoners were properly committed for trial, and the writ must be dismissed.

---

(59 App. Div. 250.)

### ROHAN v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, Second Department. March 27, 1901.)

MASTER AND SERVANT—ASSUMED RISK.

    Plaintiff had been employed for four years in defendant's boiler room, and had seen the construction of the boilers and of a bridge suspended in front of them. He used the bridge, sometimes, once a day, and from the floor could see the entire platform to the bridge, and the space where the platform ended. *Held*, that plaintiff assumed the risk, and could not recover for injury caused by his falling through the space while making his way from the boilers, where he had gone to shut off escaping steam caused by an explosion.

Appeal from trial term, Queens county.

Action by Patrick Rohan against the Metropolitan Street-Railway Company. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Thomas W. Burke, for appellant.
Herbert C. Smyth and Edwin A. Jones, for respondent.

JENKS, J. The plaintiff appeals from a judgment dismissing the complaint at the close of his case. The action is for negligence, and plaintiff would make the defendant liable for negligence in construction and in maintenance of a bridge in its fire room. There were 12 boilers in this room, placed in a row, and numbered from 1 to 12,

and connected by valves with the main steam pipe. The bridge, of iron latticework, was suspended from the ceiling, 30 feet above the floor, and ran in front of the boilers. The platform of the bridge ended at some distance beyond boiler No. 4, but the hand rail thereof ran beyond that end. Two ladders, placed at boilers 5 and 6 and at boilers 9 and 10, respectively, gave access from the floor to the bridge. The fire room was lighted by windows, and, when necessary, by electricity. The plaintiff had been employed in that room for four years (three as a fireman, and one as a water tender); and it was his duty, as occasion required, to connect or to disconnect, by the valves, the boilers and the main steam pipe. About 5 o'clock on the afternoon of January 29, 1899, there was an explosion at boiler 9. Plaintiff, then on duty, went up the ladder at boilers 4 and 5 to reach the valve. It worked with difficulty, the plaintiff was scalded, the room became dark from vapor, and the plaintiff then began to make his way along the platform, on his hands and knees, towards the ladder between boilers 4 and 5. He testifies:

"I came along on my hands and knees,—crept along,—trying to escape, until I came to the end of the bridge. and there was a hole. I felt that I was falling."

No other witness of the accident was called. The part of the platform from which it is alleged the plaintiff fell was never used by the plaintiff or by any of the employés, nor was there occasion to foresee that any one would go there for any purpose. The plaintiff testifies:

"I never went past No. 5 boiler. Never had any cause to. Didn't see any use for it. It was not necessary to go on that platform for cutting off of valves beyond boiler 5."

The construction of boilers 1 to 4, inclusive, was different from that of the others; the valves of the former being reached without going upon the bridge. Plaintiff's witness Roarty testifies that the place where plaintiff fell was where the platform "was not used at all," and that the end thereof was about 12 feet distant from the top of the ladder, "where men would get upon the platform."

Even assuming that the entire bridge and its platform were used, or were for use, the defendant had the right to construct and to maintain them in the manner in question, provided any danger to its employé was open, and not due to a latent defect. De Forest v. Jewett, 88 N. Y. 264, and cases cited; Robbins v. Paper Co. (Sup.) 65 N. Y. Supp. 955, 962. The plaintiff had been employed in that room for four years. He had seen the construction of the boilers and the bridge from the beginning. He testifies that from the floor of the room one could see the entire platform perfectly apparent. He had occasion to use the bridge sometimes once a day, sometimes once a week, and his witness Roarty testifies that when one was on the platform the space was just as apparent to anybody "as the presence of the stenographer." I think that the plaintiff must fail, for the reason that he took the risks which were known, or which were obvious to persons of ordinary intelligence. De Forest v. Jewett, supra; Williams v. Railroad Co., 116 N. Y. 628, 22 N. E. 1117; Crown v. Orr, 140 N. Y. 450, 35 N. E. 648. Boyle v. Construction Co., 47 App. Div. 311, 61 N. Y. Supp. 1043, is distinguishable. In that case it was held

that a hole used for dumping coal in a trestle but seven feet distant from the place where the plaintiff worked, and where there was loose planking about the hole, to be used as a covering, was a peril to which, without a light, the defendant could not expose its servant while he was working at night; and, even assuming that the plaintiff did see the hole in the light of the one day that he had worked for the defendant, it might fairly be presumed that he perceived its use, and inferred that it might be covered in the night, when not in use, and when he was called upon to work near it without any light of warning.

The judgment must be affirmed, with costs.    All concur.