allowed to testify to confessions made by the defendant to her mother in her presence, but such evidence was clearly competent.

It is further insisted that the court improperly admitted evidence of the disclosure of the occurrence by the complainant to others long after the event. Whatever evidence of this character appears in the record appears to have been received without objection, and while, in a proper case, we might reverse a conviction for the reception of illegal evidence, although no exception was taken, nothing appears here except the fact that the child did make some disclosures. What she said was not testified to by any witness, and the defendant cannot be deemed to be prejudiced by proof of the undoubted fact that some time after the commission of the crime his daughter complained of it, and made a charge against him.

The refusal of the court to compel the district attorney to make an election between the two counts of the indictment presents no error requiring reversal. The first count charged rape in the second degree, and the second count charged assault in the second degree. It may be that on the authority of People v. Aldrich (Sup.) 11 N. Y. Supp. 464, no conviction could have been had under the second count on the evidence herein. But as no request was made for a charge to that effect, and as the defendant was convicted of the main offense, the error which called for a reversal in the case cited, if it exist here, does not demand a similar result. In that case, under a like indictment, the defendant was convicted of the assault upon proof of the consummated rape, and it was held that he was convicted of a crime which was not proven. Here the conviction was of the crime which was proven. The case of People v. Flaherty, 162 N. Y. 532, 57 N. E. 73, cited by appellant, is not at all in point. There the prosecution was permitted to prove several offenses, and to make an election at the close of the people's case. Here but one offense was proven, and while the indictment may have contained a count for an offense not involved or embraced in the offense proved, and while such pleading may have been defective and demurrable, as the question was not properly raised, and the defendant has been convicted of the offense committed, proved, and charged, he cannot be said to have been prejudiced in a legal sense.

The other points raised have been duly considered, but none of them is deemed sufficient to demand a reversal of the judgment.

The judgment of conviction should be affirmed. All concur.

---

(64 App. Div. 351.)

NUGENT v. BROOKLYN UNION EL. R. CO.

(Supreme Court, Appellate Division, Second Department. October 4, 1901.)

1. NEGLIGENCE OF MASTER—COMPLAINT.

In an action for personal injuries against an elevated railroad company by a conductor of one of its work trains, the complaint alleged that defendant was negligent in maintaining a narrow platform along the sides of its tracks without a guard rail, along which defendant was compelled to pass in prosecution of his employment, and from which he fell into the street, and that defendant "carelessly and negligently permitted the platform to remain in an unsafe and perilous con-

dition." *Held*, that this was insufficient as an allegation of negligence, no statute requiring guard rails on such structures, and it not appearing but that the plaintiff knew, or could by intelligent inspection have discovered, the risk.

**2. SAME—DANGEROUS PLACE TO WORK.**
In an action against an elevated railroad company by a conductor of a work train for injuries sustained by falling from a narrow, unguarded platform along the tracks into the street, plaintiff's evidence that "he walked along the platform, and stepped on something and slipped," in connection with all the other evidence in the case, showing that the platform was dry and free from ice and snow, is insufficient to show negligence in defendant in permitting the platform to become slippery.

**8. SAME.**
A platform 2½ feet wide, without a guard rail, along the tracks of an elevated railroad company, over which its employés are compelled to pass, constitutes a reasonably safe place in which to work, so as to preclude a recovery for injuries by an employé who falls from such platform to the street below.

**4. SAME—ASSUMPTION OF RISK.**
In an action against an elevated railroad company by an employé for injuries, it appeared that plaintiff had been in the employ of the company for 10 years, during which he had been lampman, brakeman, and conductor. He testified that he had observed narrow, unguarded walks along the sides of the tracks similar to that from which he fell, and had passed along such a walk in switching a train, but that at the time of the accident he had not observed the width of the walk in question, nor that it was unguarded. Other evidence showed that he had previously traversed similar walks, and also the one from which he fell. *Held*, that plaintiff assumed the risk.

Appeal from trial term, Kings county.

Action for injuries by Frank Nugent against the Brooklyn Union Elevated Railroad Company. From a judgment in favor of plaintiff, and an order denying a motion for a new trial on the minutes, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

John L. Wells, for appellant.
Henry A. Powell, for respondent.

HIRSCHBERG, J. The verdict upon which the judgment appealed from was entered was rendered upon the second trial of the case. On the first trial the plaintiff also recovered a verdict, but that verdict appears to have been set aside by the trial court upon the ground that the plaintiff in his evidence given upon that trial frankly admitted his knowledge of and familiarity with the condition of the structure where he fell, and the absence of any rail or guard. On this trial he denied such knowledge or familiarity, but as such denial was necessarily accompanied by the assertion that he took no notice whatever of the structure, and as the danger was quite apparent and obvious had he seen fit to look, it is quite impossible to uphold the second verdict on any known principle of law. At the time of the accident the plaintiff was in charge as conductor of a work train made up of flat cars on the defendant's elevated road in Brooklyn at the intersection of Broadway and Myrtle avenue. The train was used for picking up old ties along the road. The plaintiff at the time of

the accident was about to switch his train in order to permit a passenger train to pass, and had alighted from a car and was proceeding to the switch along a narrow platform provided for that purpose, when he fell from the platform into the street, and was very seriously injured. The accident occurred at five minutes before 3 o'clock in the afternoon of December 5, 1898. The road was then in the hands of a receiver, to whose liability, if any, the defendant has succeeded. The allegation of negligence in the complaint is to the effect that at the point referred to—

"There was a narrow platform, at a high elevation above the level of the streets, which said platform the employés of the said receiver, including this plaintiff, were compelled and required to use in the prosecution of their work, for the purpose of walking over the same along the line of the railroad when engaged in the work of switching trains and other work; that the said receiver carelessly and negligently failed to provide a guard rail or any other protection for the safety and security of such employés as were compelled and required to use the said platform as aforesaid; and that the said receiver carelessly and negligently maintained, permitted, and allowed the said platform on the said date to remain in said unsafe and perilous condition."

This allegation of negligence is undoubtedly insufficient as the basis of an action. No statute requires the construction of guard rails or other protection on the platforms furnished for the use of railway employés. There is no allegation that the structure was not open and visible. There is no claim of any defect in the material of which it is composed, or the manner in which it was put together. There is no statement that the plaintiff did not know the risk attendant upon walking a high and narrow platform, or could not have discovered the risk by intelligent inspection; and such risk, on the face of the complaint, was assumed by the plaintiff, as incident to his employment. The complaint, however, alleges the happening of the accident as follows:

"That on or about the said 5th day of December, 1898, plaintiff was set to work by the said receiver, and put in charge of a work train upon the said road, as the conductor of the said train; that his work upon the said train consisted in directing the movements and management of the said train as it moved along the said elevated road; that the plaintiff in the prosecution of his said work on the said date was compelled and required to go upon the said platform for the purpose of switching or side-tracking the said train at the said point; that, while walking along the said narrow and unguarded platform in a careful and cautious manner, he stepped upon certain ice or snow or upon some slippery substance which had been by the said receiver carelessly and negligently allowed to gather and remain upon said platform; and that, said platform being unguarded and unprotected by any guard rail or in any other manner, he was precipitated over the edge of the same," etc.

Assuming that the allegation to the effect that the receiver had permitted the platform to become and remain slippery is a sufficient charge of negligence, it does not aid the plaintiff, for the case is wholly barren of proof to support it. All the evidence, with the exception of that of the plaintiff himself, is to the effect that the platform was not slippery, but that it was dry and free from snow and ice. The plaintiff testified that as he was walking along he slipped and fell. He did not know what caused him to slip. He said, "I walked along the platform, and I stepped on something and slipped." Manifestly,

this is wholly insufficient as proof of negligence in the maintenance of a slippery structure. Not only is there no evidence of the nature of the "something," or who placed it there, but no suggestion that it was on the platform such a length of time before the accident as to charge the receiver with constructive notice of its existence. The case was submitted to the jury upon the theory that they might lawfully find the defendant negligent in furnishing a platform high in the air, only 2½ feet wide, and without a railing. They were further permitted to find that the plaintiff did not and could not know the condition of the platform, in the exercise of such care as was incumbent upon him. The court refused to charge the jury at defendant's request that, if plaintiff's slipping was the proximate cause of the accident, there could be no recovery, and also refused to charge at defendant's request that if the slipping was a mere accident, for which no one was responsible, the verdict should be for the defendant. The verdict is therefore based on two propositions: First, that the jury could find that in furnishing the structure in question the defendant did not furnish the plaintiff with a reasonably safe place on which to work; and, second, that they could also find from the proof that the plaintiff's opportunities to discover the danger were not sufficient to charge him with notice of the character of the structure; or, in other words, that the risk was one which he did not assume. Neither proposition is sound. The plaintiff had been in the employ of the defendant, at the time of the accident, 10 years. The platform was similar in every respect to those constructed on other portions of the road, excepting at stations or yards where the whole surface of the structure was boarded over, and there was no proof that such platform had ever during the 10 years proven insufficient or dangerous. The plaintiff's original employment was as lampman,—that is, he was engaged to clean the lamps in the cars,—and his duties were performed at the yard at Manhattan Junction. In July, 1898, he was made brakeman on the passenger train, and for a few weeks immediately preceding the accident acted as conductor from time to time on the work trains. It cannot be doubted that he had abundant opportunities during his 10 years of service to observe the general construction of the platforms along the road. Indeed, he admitted on the first trial, as has been said, that he had seen the platforms before the accident, and knew that they were of the same character as the one from which he fell. He testified on that trial as follows:

"Q. You used to be brakeman on trains, occasionally, that run over this road, did you not? A. On the Broadway road? Q. Yes. A. Yes, sir. Q. Didn't you ever notice any board walk at all along on that road? A. There are some. Q. Did you ever see them? A. Yes; at some points. Q. They were like this board walk near Myrtle avenue, were they not? A. Some of them; yes, sir. Q. All of them, are they not? A. No, sir. Q. Where are they,—those like this one? A. Manhattan Junction. Q. In the yard, you mean? A. Yes, sir. Q. No; I mean on the structure, away from the yard. A. All the same, I guess. Q. All the same along the line as the one from which you fell. Is that right? A. Yes, sir. Q. On the Fifth Avenue line, did you observe the plank walks? A. I didn't take notice. Q. You know they are there? A. They are there in some places, I believe. Q. And like the plank walk at the place where you fell? A. Yes. Q. The inside walk is just the same as the outside walk, in size and everything, is it not? A. I could not say. Q. It is pretty near the same? A. Yes, sir. Q. You

were going to walk right straight ahead of you? A. Yes. Q. Along the board walk? A. Yes, sir. Q. Were you looking at it? A. Looking at what? Q. Were you looking where you were going? A. Yes, sir. Q. You knew that, if you did not look, you might step off into the street? A. Yes, sir. Q. You say that there were no guard rails there? A. I knew that there was nothing there when I was walking along. Q. And you slipped and fell? A. Yes, sir. Q. You have said you had ridden on flat cars before this day. How often had you ridden on flat cars before this? A. I could not say how many times. Q. How long before this accident was the last time you had ridden on a flat car? A. The week before, I guess. Q. What were you doing on a flat car the week before this accident? A. Doing the same thing, —picking up old ties. Q. Do you remember at what point you used to turn the switches? A. No, sir. Q. Where you turned the switches, you had to get off your car and walk along the board walk to the switch? A. Yes, sir. Q. The kind of board walks you have described? A. Yes. Q. Substantially like the one off of which you fell? A. Yes, sir. Q. Without a guard rail? A. Yes, sir."

In addition to this testimony given by the plaintiff upon the first trial, and which was introduced in evidence upon this trial, there was evidence documentary, in the nature of reports, and also by eyewitnesses, showing that the plaintiff had not only performed duties similar to those in which he was engaged at the time of the accident, but that he had opened the switch at the junction of Broadway and Myrtle avenue previously to the time when he fell, and on December 5, 1898, traversing the board walk in question. Conceding that the conflict in the evidence still rendered the question of his knowledge of the situation a proper consideration for the determination of his duty, his final story exhibited a lack of due care on his part which would preclude recovery. He testified on this trial as follows:

"Q. At the time, Mr. Nugent, when you went to this switch at the time that the accident happened, did you or did you not know that there was no rail at that switch? A. No, sir; I did not. Q. You mean by that that you didn't know that there was no rail there? A. Yes, sir. * * * Q. And as you got down on the platform you could see the platform, couldn't you? A. Well, I didn't look to see. Q. You didn't look at the platform at all? A. I see there was a platform there; yes, sir. Q. And you could see how wide it was, couldn't you? A. No, sir. I didn't take notice how wide it was. * * * Q. You saw that there were no guard rails there, didn't you? A. No, sir; I did not take notice."

If this testimony be true,—that the plaintiff took no notice whatever of his surroundings; that in broad daylight he walked along the platform without looking to see how wide it was, and without taking any notice of whether there was a guard rail to protect him in case of slipping or of missing his footing in any way,—he was clearly guilty of contributory negligence. On the other hand, if he knew the condition of the platform, or could have known it by the exercise of ordinary care and intelligence at the time, he must be deemed to have assumed whatever risks were incident to the use of the structure. The rule is accurately expressed in the headnote in Williams v. Railroad Co., 116 N. Y. 628, 22 N. E. 1117,—that "a servant who enters upon an employment from its nature hazardous assumes the usual risks and perils of the service, and of the open, visible structures known to him, or which he must have known had he exercised ordinary care and observation." His duty was, as stated by Judge Bradley in Fredenberg v. Railway Co., 114 N. Y. 582, 583, 21 N. E. 1049,

11 Am. St. Rep. 697, "to use due diligence to familiarize himself by observation with the structures and their situation and condition in the yard, with a view to his own safety in the performance of his duty, and for the protection of himself against injury." See, also, Rohan v. Railway Co., 59 App. Div. 250, 69 N. Y. Supp. 570, and cases cited. The proof failed to establish actionable negligence on the part of the defendant. It could lawfully maintain the platform in question, notwithstanding the risks incident to its use; there being nothing latent, hidden, or concealed, and nothing which was not equally apparent to the servant as to the master. Kaare v. Iron Co., 139 N. Y. 369, 34 N. E. 901; Kennedy v. Railway Co., 145 N. Y. 288, 39 N. E. 956; Robbins v. Paper Co., 53 App. Div. 641, 645, 65 N. Y. Supp. 955. The judgment and order should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.