(83 App. Div. 343.)

## JENKS v. THOMPSON.

(Supreme Court, Appellate Division, First Department. May 15, 1903.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—DEFECTIVE SCAFFOLD—EVIDENCE—EXPERTS.

The labor law (Laws 1897, p. 467, c. 415, § 18) prohibits any person employing another to perform labor in the erection of any house from furnishing unsafe scaffolding. Plaintiff was injured by being thrown from a springy scaffold while shingling the outside of a building.

---

¶ 1. See Evidence, vol. 20, Cent. Dig. § 2318.

*Held,* that whether the scaffold, as constructed, was a safe and adequate one, within the meaning of the labor law, was a question of fact on which the opinions of experts were admissible.

Van Brunt, P. J., and McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Delancy Jenks against Walter E. Thompson. From a judgment dismissing the complaint at the close of plaintiff's case, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Frank C. Avery, for appellant.
H. Snowden Marshall, for respondent.

PATTERSON, J.   The plaintiff was a carpenter employed by the defendant in and about the erection of a hotel at Round Island Park, in the state of New York.   He was required, in the course of his employment, to put shingles on the outside of the structure.   In order to do his work he had to stand upon a scaffold, which is described as being on the outside of the building, about 25 to 28 feet above the ground.   It was made of three hemlock boards seven-eighths of an inch thick.   Two were placed together on the same level, and the other on top of them.   Two boards were 10 inches wide each, and the other 8 inches wide, the whole width of the scaffold being 18 or 20 inches.   The boards of which the scaffold was composed were supported by braces or brackets about 9 feet apart, standing out from the windows.   The plaintiff was working on this scaffold, trimming shingles that had been nailed onto the structure.   There was a knot in a shingle, and he had to use some upward pressure in cutting through it.   While he was in the act of doing so, the knot gave way, the scaffold sprang up, and the plaintiff fell therefrom and sustained very serious injuries.   The defendant is charged with negligence and a violation of section 18 of the labor law (Laws 1897, p. 467, c. 415), such alleged violation consisting in furnishing an unsafe scaffold for the plaintiff to work on.   It is charged in the complaint that the scaffold was too narrow, the boards composing the same too thin, springy, and uneven, and not properly secured by cleats or nails, and that the scaffold was unprovided with a guard or railing, and was not properly braced, fastened, and secured.   The plaintiff had been at work on this scaffold for only three hours, and at the particular place from which he fell he had been at work only a half hour.   He testified that, when he walked across the scaffold, he felt that it was springy.   At the close of the plaintiff's evidence, the complaint was dismissed, and from the judgment entered thereon the plaintiff appeals.

It is sought to support this judgment on the ground that the plaintiff assumed the risk of his employment; that he knew the scaffold was unsafe, because he testified that when he walked across it he found it was springy.   There is no doubt that the rule with respect to the assumption by an employé of the obvious risks of his employment applies to a case arising under the labor act, as well as in

an ordinary action for negligence at common law (Knisley v. Pratt, 148 N. Y. 372, 42 N. E. 667, 35 L. R. A. 447, which was a case under the factory act), but the burden of showing that the employé assumed the risk of obvious dangers rests upon the employer (Dowd v. N. Y. O. & W. R'way Co., 170 N. Y. 459, 63 N. E. 541). If the proof is made by the plaintiff, of course that will suffice, but in this case it cannot be said that this scaffold was obviously an unsafe appliance. The plaintiff found it springy, but that was not alone the cause of its being unsafe. It was only, at the utmost, 20 inches in width, and its narrowness, in combination with the springiness of the material, may have rendered it unsafe, and, when the plaintiff lost his balance by reason of the boards rebounding when the pressure was taken off by the giving way of the knot in the shingle, the very narrowness of the structure may have been the reason for the plaintiff falling off. It cannot be said that it must be assumed that it was patent to the observation of the plaintiff that the scaffold was too narrow to be safe, and it cannot be held, as matter of law, that the risk of falling off the scaffold, under the circumstances described by the plaintiff, was voluntarily assumed by him.

If that view of the case is correct, then it became a question of fact as to this scaffold being a safe and adequate one, within the meaning of the labor law. The plaintiff attempted to show that it was not, and asked an expert witness a series of questions directed to eliciting his opinion on the subject. The witness was not permitted to answer the questions, and the rulings of the court were excepted to. Such rulings were erroneous. The testimony was excluded, evidently on the theory that opinion evidence was not admissible to prove a fact in issue, which it was the province of the jury to pass upon, and not of an expert witness. It is sought to support that theory upon the ruling made in Dougherty v. Milliken, 163 N. Y. 527, 57 N. E. 757, 79 Am. St. Rep. 608. In that case the testimony of witnesses who were called upon to express an opinion as to a scaffold being constructed so as to be safe, and as to its being properly placed, was declared to be inadmissible, but that was held only as applying to the particular facts of that case. In Finn v. Cassidy, 165 N. Y. 584, 59 N. E. 311, 53 L. R. A. 877, it was held that expert testimony is admissible in a case of this character, where the questions asked are based upon facts, and the disclosure is made of the whole situation as to a reasonably safe place being provided in which an employé is to work. The case of Dougherty v. Milliken, supra, is considered in the opinion of the court, and it is shown that that decision rested upon the consideration that there was not a single fact made to appear upon which the charge of negligence could rest, and that that circumstance alone would have justified the decision, and, further, that there were no facts shown upon which an expert could properly base an opinion, and that the questions were insufficient and improper in form to lay the foundation for such opinions.

In the case at bar the skilled witness called by the plaintiff was asked whether, in his opinion, a scaffold so constructed of boards that either end of the boards rested upon supports about 9 feet apart, and where the boards were of hemlock, seven-eighths of an inch in thick-

ness, the scaffold consisting of three boards, two together and one on top of the other two, one board being 10 inches wide and another 6 inches wide and another 10 inches wide, was so constructed as to furnish a safe and proper place on which a workman might work, supposing him to be a man of about 118 or 120 pounds in weight (which was the plaintiff's weight), employed in the business of trimming off shingles in the manner described. He was further asked if a scaffold, such as described and constructed and used, was, in his opinion, a safe, suitable, or proper scaffold, so constructed as to give proper protection to the life or limb of the person employed or engaged upon it. These questions should have been answered. The conditions as to material, the placing of the material, the thickness of the planks, the width of the scaffold, and the weight of a person upon it, and the nature of the work required of such person, furnished the data that were lacking in Dougherty v. Milliken.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.

O'BRIEN, J., concurs.  VAN BRUNT, P. J., dissents.

INGRAHAM, J. (concurring).  At the time of the commencement of this action, section 18 of the labor law (chapter 415, p. 467, Laws 1897) provided:

"A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure shall not furnish or erect, or cause to be furnished or erected, for the performance of such labor, scaffolding * * * which are unsafe, unsuitable or improper, or which are not so constructed, furnished or operated as to give proper protection to the life and limb of the person so employed or engaged."

In Stewart v. Ferguson, 164 N. Y. 553, 58 N. E. 662, it was held that this section "is a positive prohibition laid upon the master, without exception upon account of his ignorance or the carelessness of his servants"; that this provision enlarges the duties of the master or employer, and extends it to responsibility for the safety of the scaffold itself, and thus for want of care in the details of its construction; and a violation of the provision of this law by a master which resulted in an injury to an employé is evidence of negligence which is sufficient to sustain a verdict of the jury that the employer was negligent.

In this action the scaffold did not fall, and, so far as appears, was sufficient to sustain the weight of the plaintiff while engaged in the work that he was directed to do. He testified that while working upon the scaffold he noticed that the boards of which it was constructed were springy and that they were not nailed; that the scaffold sprung more when he stepped upon one board, but that all the boards were springy; that after he had worked on the scaffold for some time he had to trim up the shingles that he had placed upon the building; that there was a knot in one shingle, and in order to cut through it he had to press upon it; that, as the chisel that he was using went through the knot, the spring of the scaffold threw him up and caused

him to fall, from which he sustained severe injuries. And his testimony as to the condition of the scaffold was corroborated by a fellow workman who, after the accident, went upon the scaffold, and who testified that he noticed that the boards of which the scaffold was constructed were hemlock seven-eighths of an inch thick; that, as he walked, he noticed that the boards were springy. The plaintiff then called a witness who testified that he had been a carpenter for 20 years; that he understood the nature and strength of the various kinds of wood; that he had built scaffolding; that he had used pine wood, oak, chestnut, and hemlock. A hypothetical question was then put to him, which, after reciting the facts testified to as to the construction of this scaffold, asked: "In your opinion, is a scaffold so constructed a safe and proper place on which a workman may work?" He was then asked: "State what, in your opinion and from your experience, is a safe and suitable way to construct a scaffold?" Another witness was called, who testified that he had been a carpenter for more than 20 years, and had to do with the various kinds of wood in his business; that he knew the nature of hemlock wood. He was asked: "Is not hemlock wood a very springy wood, liable to give with pressure, and to spring up when the pressure is removed?" "Is a scaffold built out of hemlock wood, so arranged that there are three planks of hemlock wood resting on supports 9 feet apart, the wood being seven-eighths of an inch thick, a safe and suitable scaffold for a man to work upon, weighing about 120 pounds?" "What is the usual and customary method of constructing scaffolds in the state of New York?" He was also asked if there was a general custom as to building of scaffolds in New York by contractors for carpenters to work upon. All these questions were objected to by the defendant, the objection sustained, and exception taken by the plaintiff. At the end of the plaintiff's case the complaint was dismissed.

The exclusion of this testimony, I think, was error that requires a reversal of the judgment. The duty imposed upon the defendant in furnishing this scaffold upon which the plaintiff was directed to work was to furnish a scaffold which was safe, suitable, or proper, and so constructed as to secure proper protection to the life and limb of the person employed to work thereon. The jury was justified in finding from the testimony that the injury to the plaintiff was caused because of this springy condition of the scaffold, which caused him to fall, and the question whether this scaffold was an unsafe, unsuitable, and improper scaffold was the question upon which the defendant's liability depended. The mere fact that the scaffold was springy, without other evidence to show that it was an unsafe, unsuitable, and improper scaffold for the use of the plaintiff, was not, I think, sufficient to justify the jury in finding that the defendant had failed in this duty imposed upon him; but, in view of the last decision of the Court of Appeals upon this subject, I think expert testimony as to whether or not this scaffold was unsafe, unsuitable, and improper was competent. This question was exhaustively examined in Finn v. Cassidy, 165 N. Y. 584, 59 N. E. 311, 53 L. R. A. 877, and I think that decision is sufficient to justify the introduction

of this evidence. Judge O'Brien, in delivering the· opinion of the court, quotes with approval the rule stated in 1 Greenleaf on Evidence (Ed. 1899) § 441, that, in practice, opinions are receivable from persons having special skill, whether the data in question have been personally observed by them or are stated to them, whenever that special skill enables them, better than the jury, to draw inferences on the subject; that in such a case the witness is not attempting to decide the issue, and thus usurp their place, but merely to give evidence which they may or may not accept. "It is sometimes said that an opinion is not to be offered on 'the very issue before the jury.' But this, as once remarked, would rather 'seem to be a very good reason for its admission.' If the witness can add instruction over and above what the jury are able to obtain from the data before them, it is no objection that he refers to the precise matter in issue." And the court also cites with approval Prendible v. C. R. Mfg. Co., 160 Mass. 131, 35 N. E. 675, where the court said:

"We are of opinion that a person who has made a special study of the strength of materials and the proper mode of building structures to sustain weight may be allowed to give his opinion as to whether a staging erected in a specific way can safely be trusted to carry a particular load."

Here the question was as to whether this scaffold was constructed so as to be an unsafe, unsuitable, and improper scaffold under the particular circumstances, considering its situation and the use to which it was to be put. If it had been proved that this scaffold was not constructed in the ordinary way in which scaffolds are constructed, and that in the opinion of those who have made a special study of the construction of such scaffolds it was not a· safe and proper structure, there would then have been, I think, a question for the jury as to whether the defendant had complied with the duty imposed upon him by the statute; and, if he had not, the question as to his negligence, and whether the plaintiff assumed the risk incident to the use of the scaffold, would have been for the jury. It is quite evident that an ordinary jury, not familiar with this kind of work, or the use of materials usual and proper in the construction of such a scaffold, without this expert opinion, would be unable intelligently to pass upon the question. The mere fact that the boards were springy, and that the plaintiff fell, was not sufficient to justify a finding that the scaffold was an unsafe or improper scaffold, but the jury could not intelligently pass upon that question without some special familiarity with the nature of those materials and the usual method of constructing such a scaffold.

I think that the exclusion of this· evidence was error which requires a reversal of the judgment, and I therefore concur with Mr. Justice PATTERSON in the conclusion at which he has arrived.

McLAUGHLIN, J. (dissenting). I am unable to concur in the prevailing opinion. The negligence of the defendant consisted in his furnishing for the use of the plaintiff an unsafe appliance—a scaffold. Its unsafeness consisted in its being narrow, without a railing, and made of lumber of insufficient thickness, or else not supported or fastened together so that it would not spring as a person walked

upon it. It is fair to assume that the plaintiff could see, and, inasmuch as he was a carpenter by trade, that he had some knowledge as to the construction of scaffolds, and whether it was safe to work upon one which was narrow, without a railing, and "springy." If he commenced his work upon the scaffold without looking to see how wide it was, without taking any notice whether there was a guard rail to protect him in case he slipped or lost his balance, or whether it was improperly supported, he was guilty of contributory negligence; and if, on the other hand, he knew the condition of the scaffold when he went to work, then he must be deemed to have assumed whatever risks there were incident to the use of it in its then condition. Nugent v. Brooklyn Union El. R. R. Co., 64 App. Div. 351, 72 N. Y. Supp. 67; Shaw v. Sheldon, 103 N. Y. 667, 9 N. E. 183; Anthony v. Leeret, 105 N. Y. 591, 12 N. E. 561. That the plaintiff did know the condition of the scaffold when he went to work is apparent from his own testimony. The accident happened in broad daylight, and he testified that when he walked across the scaffold it was "springy," and he could not help but see the width of it, and that there was no guard rail of any kind.

Nor do I think any error was committed by the Trial Court in excluding the answers to certain questions put to plaintiff's experts as to whether the scaffold was a safe one to work upon. It was not for the experts to say whether the scaffold was safe, but for the jury, after considering all the evidence laid before them bearing on that subject. Dougherty v. Milliken, 163 N. Y. 527, 57 N. E. 757, 79 Am. St. Rep. 608; Harley v. B. C. M. Co., 142 N. Y. 31, 36 N. E. 813; Cramer v. Slade, 66 App. Div. 59, 73 N. Y. Supp. 125; Kelpy v. Triest, 73 App. Div. 597, 76 N. Y. Supp. 742.

I am of the opinion that the complaint was properly dismissed, and for that reason the judgment should be affirmed.

VAN BRUNT, P. J., concurs.