HUGH DOUGHERTY, Respondent, *v.* EDWARD F. MILLIKEN et al., Appellants.

1. EVIDENCE — WHEN EXPERTS MAY STATE ONLY FACTS — WHEN THEY MAY STATE FACTS AND GIVE OPINIONS. Expert testimony is admissible in two classes of cases: *First,* where the conclusions to be drawn by the jury depend upon the existence of facts, not of common knowledge, but which are known to men whose study and experience enable them to speak with authority, in which cases experts can only give the facts while the jury must draw the conclusion; *second,* where the conclusions to be drawn from the facts stated, as well as knowledge of the facts themselves, depend upon professional or scientific knowledge or skill; and here experts may give the facts and their conclusions therefrom in the form of an opinion, which the jury may adopt or reject; if the knowledge of the experts consists in descriptive facts which can intelligently be communicated to others not familiar with the subject, the case belongs to the first class; but if the subject be one where such knowledge or skill can be communicated only in the form of reasons, arguments or opinions, it belongs to the second class.

2. NEGLIGENCE — IMPROPER ADMISSION IN EVIDENCE OF OPINION AS TO SUFFICIENCY OF EYEBOLT. When, in an employee's action against his employers to recover damages for injuries caused by his having been thrown from their hoisting derrick when it fell because an eyebolt, helping to support that and another derrick, broke, it is a question of fact whether the eyebolt was sufficient to support both derricks, it is erroneous to permit experts to express an opinion that "it was not sufficient," and their testimony should be limited to descriptive facts from which the jury can form a conclusion whether the eyebolt was sufficient to sustain both derricks or not.

*Dougherty* v. *Milliken,* 26 App. Div. 386, reversed.

(Argued May 16, 1900; decided June 22, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered February 23, 1898, modifying, and affirming as modified, a judgment in favor of plaintiff, and affirming an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Perry D. Trafford* for appellants. The defendants furnished to their workmen a safe place in which to work, and also furnished to them properly constructed derricks, with suitable guy lines, as appliances with which to do their work. They left it to the workmen themselves to fasten the guys in whatever way seemed to them secure, and for the carelessness of the workmen in fastening these guys — a detail of the work — the defendants are not liable. (*Yaw* v. *Whitmore,* 37 App. Div. 98; *Marvin* v. *Muller,* 25 Hun, 163; *Kennedy* v. *J. A. I. Works,* 12 Misc. Rep. 336; *Jenkinson* v. *Carlin,* 10 Misc. Rep. 22; *Holden* v. *F. R. R. Co.,* 129 Mass. 268; *Doyle* v. *White,* 9 App. Div. 521; *McCampbell* v. *C. S. S. Co.,* 144 N. Y. 552; *Webber* v. *Piper,* 109 N. Y. 496; *Butler* v. *Townsend,* 126 N. Y. 105; *Harley* v. *B. C. Mfg. Co.,* 142 N. Y. 31.) The court erred in the admission of certain testimony given by so-called expert witnesses who testified for the plaintiff. (*Ferguson* v. *Hubbell,* 97 N. Y. 507; *Roberts* v. *N. Y. El. R. R. Co.,* 128 N. Y. 455; *Harley* v. *B. C. Mfg. Co.,* 142 N. Y. 31; *Schneider* v. *S. A. R. R. Co.,* 133 N. Y. 583; *Parish* v. *Baird,* 160 N. Y. 302; *Van Wycklen* v. *City of Brooklyn,* 118 N. Y. 424; *Van Zandt* v. *M. B. L. Ins. Co.,* 55 N. Y. 169; *Gerbig* v. *N. Y., L. E. & W. R. R. Co.,* 22 N. Y. Supp. 21; *Schwander* v. *Birge,* 46 Hun, 66.)

*Isaac M. Kapper* for respondent. The evidence of the plaintiff's experts as to the usual and customary mode of inserting an eyebolt into wood to support derricks and the sufficiency of the eyebolt in question, was competent and

properly admitted. (*Slocovich* v. *O. M. Ins. Co.*, 108 N. Y. 56; *Oties* v. *C. El. S. & A. Co.*, 26 N. Y. S. R. 869; 130 N. Y. 639; *Kumburger* v. *Congress Spring Co.*, 158 N. Y. 339; *Curtis* v. *Gano*, 26 N. Y. 426; *Conrad* v. *Vil. of Ithaca*, 16 N. Y. 158; *C. S. R. Co.* v. *B., N. Y. & E. R. R. Co.*, 3 Hun, 623; *Bellinger* v. *N. Y. C. R. R.*, 23 N. Y. 42; *Meiners* v. *Steinway*, 12 J. & S. 369; *Moore* v. *Westervelt*, 27 N. Y. 234; *Amadon* v. *Ingersoll*, 34 Hun, 132.)

WERNER, J.    This action was brought to recover damages for personal injuries resulting from the collapse of a derrick upon which the plaintiff was at work when the accident occurred.    The negligence charged against the defendants is, that a certain eyebolt to which said derrick and another derrick were fastened by means of cables or guys was "in an unsafe, insufficient, insecure, dangerous and improper condition for the purpose for which the defendants used the same, so that solely by reason thereof and while the plaintiff was upon one of the said derricks as aforesaid, the said eyebolt broke, causing said derrick to fall."

Aside from the testimony of the experts, which will be hereafter referred to, the evidence adduced for the plaintiff establishes the following facts: The defendants were engaged in the business of iron and steel construction.    The plaintiff had been employed by them as a laborer for about two years prior to the day of the accident.    Two or three months before the accident defendants had removed their shops to the foot of Clinton street in the city of Brooklyn.    Upon the docks which formed a part of the yards adjacent to defendants' shops there were erected two derricks about 60 or 70 feet apart.    The mast of the larger one was about 35 or 40 feet in height, and that of the smaller one measured about 30 feet.    The boom upon each was somewhat shorter than its companion mast.    These derricks had been in use at this yard for two or three weeks.    One week before the accident they were put up at the place where they afterwards fell.    Each of said derricks was supported by four guys which were fastened at different places.    The only

67

eyebolt used as an anchor was the one which broke and caused the accident. It was about an inch in diameter and 10 or 12 inches long. When the derricks were last erected, prior to the accident, one of the guys running to the smaller one was anchored into this eyebolt which was screwed perpendicularly into the stringpiece at the end of the dock. Between the time when the derricks were thus erected and the happening of the accident, one of the guys of the larger derrick was also fastened to said eyebolt; but the evidence does not disclose when or by whom, or under what circumstances it was done. On the day before the accident one Avery, another of defendants' employees, who is referred to by plaintiff as his "immediate boss," commenced the work of substituting wire guys for ropes. During that afternoon the plaintiff was engaged in carrying wire and materials for this work. On the morning of the accident plaintiff was directed by Avery to go aloft, and he was hoisted to the top of the larger derrick. While steadying himself in this position and awaiting orders from Avery both derricks collapsed; the plaintiff was precipitated upon the docks and sustained the injuries complained of.

At the time of the accident a "fifteen-inch" iron beam 40 or 45 feet long and weighing about 1,600 pounds was being hoisted upon the smaller derrick. Upon investigation as to the cause of the accident, it was discovered that the eyebolt, which had served as an anchor between the two derricks, had broken off "about an inch into the wood." There was no evidence of any inherent defect in the eyebolt except that given by the witness Avery, who testified "that it looked all right, with the exception of one little spot in it. * * * There was a peculiar look in the iron. * * * It did not look just as the other parts of the iron did."

This *resumé* of the facts clearly discloses the inherent weakness of plaintiff's case which rendered a resort to expert testimony both prudent and necessary. The facts above referred to were obviously insufficient to support the allegations of negligence set forth in the complaint. Before adverting to the exceptions which were taken to the evidence of the experts, let us clearly emphasize the position of the case with-

out such evidence. The falling of the derricks, the apparent cause and the resultant injuries to the plaintiff, were clearly shown; but nothing more. Indeed, the case is so singularly barren of essential facts as to make it almost a matter of conjecture whether the accident happened under circumstances which would in any event render the defendants liable for its consequences. It seems to have been assumed rather than proved that the derricks in question were designed for continuous use in the place where the accident occurred. The case was submitted to the jury, apparently without objection from defendants' counsel, upon the theory that these structures and the character of their use were such as to charge the defendants with the master's primary duty of furnishing to their servants reasonably safe and suitable tools, appliances and machinery. The learned Appellate Division affirmed the judgment entered upon the verdict on the assumption that these derricks " were intended and erected for permanent use." We have scanned the record for evidence in support of this assumption, but in vain. The facts disclosed by the evidence are quite as consistent with the theory that the fastening of these derricks was a mere detail of some work, the improper performance of which by any one but the plaintiff would have been the negligence of a co-employee, as with the assumption that the structures were such as to charge the defendants with responsibility not only for the sufficiency and suitableness of their constituent parts, but the safety and adequacy of their construction as a whole. A derrick is one of those appliances which may be used in various ways and for different purposes. In some circumstances it may be a mere temporary means to an end, in the performance of the work which, of necessity, makes the kind and number of its fastenings dependent upon the exigencies of the moment or the situation. In such a case, if the master has exercised reasonable care to furnish sufficient and proper materials and to employ competent and skillful workmen he has discharged his whole duty, and he is not responsible for the negligent use of the materials which he has furnished. Under other condi-

tions a derrick may be so used as to be a permanent appliance in the regular and ordinary conduct of the master's business, so as to charge him with responsibility not only for the sufficiency of the materials of which it is composed, but for the safety and adequacy of its construction.

In view of the omission of defendants' counsel to raise the question suggested by this distinction, either by a proper exception or request to charge, the foregoing discussion would be more academic than practical were it not for the necessity of clearly defining the relation of the expert testimony to this case. As the case stood without the expert testimony, there was an utter absence of evidence upon which to predicate a single negligent act of commission or omission against the defendants either in the employment of unskillful or incompetent co-servants of the plaintiff, in the furnishing of unsafe or inadequate materials, or in the ultimate construction of the derricks. As the case is not one which permits the inference of negligence from the mere happening of the accident, the defendants were entitled to rest upon the presumption that they had performed their duty as masters until affirmative evidence to the contrary had been given. This rule is now so well established that it may be regarded as elementary and, therefore, requires no citation of authority. It was, therefore, incumbent upon the plaintiff to show neglect of duty on the part of the defendants. It is obvious that if the case were within the rule exempting the master from liability for negligence in some mere detail of the work, expert testimony could add nothing to the issue. But assuming, as did the courts below, that the defendants were responsible to the plaintiff, no less for the exercise of reasonable care in the construction and inspection of the derricks, than in the selection of their component parts, or in the employment of workmen, it becomes apparent that the expert testimony really decided the issue.

As we have seen, the breaking of the eyebolt proved nothing. It might have broken without negligence on the part of any one. By the exigencies of his case plaintiff was

driven to the contention that the anchorage of both derricks to this single eyebolt was negligent and improper construction for which the defendants were responsible. This was based upon the evidence of the experts Johnston and Rattray to the effect that the eyebolt was not heavy enough and that the fastening to the same of two guys from opposite directions produced cross strains upon the bolt which caused it to bend and finally to break. In the light of the foregoing considerations, let us examine the proper scope and limitations of expert testimony as applied to cases of this character. It may be broadly stated as a general proposition that there are two classes of cases in which expert testimony is admissible. To the one class belong those cases in which the conclusions to be drawn by the jury depend upon the existence of facts which are not common knowledge and which are peculiarly within the knowledge of men whose experience or study enables them to speak with authority upon the subject. If, in such cases, the jury with all the facts before them can form a conclusion thereon, it is their sole province to do so. In the other class we find those cases in which the conclusions to be drawn from the facts stated, as well as knowledge of the facts themselves, depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence. In such cases not only the facts, but the conclusions to which they lead, may be testified to by qualified experts. The distinction between these two kinds of testimony is apparent. In the one instance the facts are to be stated by the experts and the conclusion is to be drawn by the jury ; in the other, the expert states the facts and gives his conclusion in the form of an opinion which may be accepted or rejected by the jury.

The next step in the logical development of this inquiry is to ascertain to which of these two classes the case at bar belongs. If the knowledge of the experts consists in descriptive facts which can be intelligently communicated to others not familiar with the subject, the case belongs to the first class. If the subject is one as to which expert skill or knowledge can be communicated to others not versed in the particu-

lar science or art only in the form of reasons, arguments or opinions, then it belongs to the second class. (*Ferguson* v. *Hubbell*, 97 N. Y. 507; *Roberts* v. *N. Y. El. R. R. Co.*, 128 N. Y. 455; *Schneider* v. *Second Ave. R. R. Co.*, 133 N. Y. 583; *Parish* v. *Baird*, 160 N. Y. 302; *Van Wycklen* v. *City of Brooklyn*, 118 N. Y. 432; *Schwander* v. *Birge*, 46 Hun, 66.) The mere statement of this rule seems, of necessity, to place this case in the first class. The structure which collapsed and caused plaintiff's injuries was a simple derrick such as is common for the hoisting of heavy materials. The particular defect in construction alleged consisted in the improper anchorage of two derricks to a single eyebolt placed between them. Whether this was defective, and therefore negligent, construction depended upon the amount and kind of strain to which the eyebolt was subjected, its size, its inherent tensile strength and the character of its fastening into its base. These were subjects upon which the testimony of men skilled and experienced in the construction and use of derricks and their constituent parts could properly be received. But such testimony, within the limitations of the rule above adverted to, should have consisted wholly of facts from which a jury of average intelligence could form a conclusion as to the safety or sufficiency of the method of construction employed. It was the province of the jury, not of the experts, to determine the latter question. In this view of the case, it was obvious error to permit the experts to express opinions which practically decided the only question that was to be submitted to the jury. Without dwelling in detail upon all of the testimony given by the experts, Johnston and Rattray, it is sufficient to refer to a single question addressed to each of them and their answers thereto, received under proper objection, which clearly reveal the inherent errors in the rulings under which this evidence was received.

These witnesses were asked the following question : " Assuming two derricks 60 or 70 feet apart, the mast of one about 30 feet tall, the mast of the other about 40 feet tall, with booms 25 feet or so in length, placed upon a dock 60 or 70 feet apart

attached to a single eyebolt located midway between the der-
ricks, but at an angle away from the derricks a little dis-
tance — so as to make the guy ropes approach the eyebolt
diagonally and the eyebolt being about 10 or 12 inches long
and an inch in thickness and inserted into wood perpendicu-
larly, do you regard that eyebolt as sufficient or insufficient
for the purpose of sustaining those derricks?" This question
was objected to as irrelevant, incompetent, immaterial and as
not a question for expert evidence, and that the witness is not
qualified to give expert evidence on that point and as calling
for a conclusion. The trial court overruled this objection and
under exception the experts were permitted to answer "No, it
was not sufficient." Without discussing the qualifications of
the experts, but assuming for the purposes of this case that they
were properly held to be competent to speak upon the sub-
ject under investigation, it seems clear that neither the ques-
tions nor the answers above referred to were within the rule
applicable to cases of this character. The sufficiency of the
derricks, or any of their parts, depended upon certain facts
which a witness skilled in that kind of construction could
easily have described and detailed to the jury. With these
facts before them the jury would have been entirely competent
to have formed the conclusion which was testified to by the
witnesses. The questions propounded to these witnesses were,
moreover, insufficient and improper in form to lay the founda-
tion for even such opinions as were given. It cannot escape
notice that the questions make no reference to the tensile
strength of such an eyebolt as was used. There is no allusion
to the maximum or minimum strain upon such a bolt situated
at it was in connection with the use of either derrick sepa-
rately or both together. Nor is there any statement as to the
maximum or minimum weights which might with safety have
been hoisted with either or both of these derricks as they were
constructed. All of these elements, which were essential factors
in determining the sufficiency or insufficiency of this eyebolt
under the circumstances, were governed by what a learned
jurist has aptly called "descriptive facts," which in turn

depended upon certain fixed physical laws. After having these placed before them, the jury would have been quite as competent to answer this question as the experts. Without these descriptive facts and physical laws by which they were governed before them, the jury could just as intelligently have decided this case upon the naked question whether they regarded this appliance as sufficient or insufficient, as they did upon the opinions of experts which were clearly unsupported by facts as a basis for the conclusion expressed.

These views lead to the conclusion that a new trial must be granted. The judgment should, therefore, be reversed and a new trial granted, with costs to abide the event.

PARKER, Ch. J., GRAY, O'BRIEN and LANDON, JJ., concur; HAIGHT and MARTIN, JJ., dissent.

Judgment reversed, etc.