(74 App. Div. 388.)

## WALTERS v. GEORGE A. FULLER CO.

(Supreme Court, Appellate Division, First Department.   July 8, 1902.)

1. EXPERT TESTIMONY—WAIVER OF OBJECTIONS.

In an action for the death of an employé, caused by the collapse of a derrick, an expert's testimony received without objection, as to what would constitute proper construction of a derrick, and also the manner and method of use, and the necessity and effect of supports, was entitled to consideration, even though the nature of the subject might not authorize the expression of an expert opinion.

2. MASTER AND SERVANT—APPLIANCES FURNISHED BY MASTER—SUFFICIENCY—QUESTIONS FOR JURY.

Where, in an action for the death of an employé, caused by the collapse of a derrick on which he was riding, there was evidence tending to show that its construction was improper, for the purpose for which it was used, it was error to say, as matter of law, that the method of supporting it by one stiff leg and guy ropes, which were detached when the boom was swung around, was the usual and proper one for the particular kind of work.

3. SAME.

Labor Law, § 18, provides that an employer shall not furnish or erect hoists or other mechanical contrivances which are unsafe, unsuitable, or improper, and which are not so constructed, placed, and operated as to give proper protection to life and limb. A derrick was constructed in such a manner that it was necessary, in operating it, to remove a large proportion of its supports, and make its safety depend on the watchfulness and care of a fellow servant in restraining the swinging of a boom, which, if neglected, would cause a collapse of the whole structure. Evidence offered in behalf of an employé injured by its collapse tended to show affirmatively that such construction was improper. *Held* to make a case for the jury, the concurring negligence of a co-servant in matter of operation furnishing no defense.

4. SAME—ASSUMPTION OF RISK.

If a servant knows the character of construction of a derrick and the dangers to be incurred in its operation, it is within the province of the jury to say that he assumed the risk, though it was unsafe.

McLaughlin, J., dissenting.

Action by Hannah Walters, as administratrix, against the George A. Fuller Company. Order dismissing the complaint, and plaintiff moved for a new trial on exceptions, which were ordered to be heard in the first instance by the appellate division. Exceptions sustained, and new trial granted.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Thomas P. Wickes, for the motion.

H. Snowden Marshall, opposed.

HATCH, J. By this action the plaintiff seeks, in her representative capacity, to recover damages against the defendant for the claimed negligence of the latter in causing the death of plaintiff's intestate. It appears from the testimony that the deceased was employed by the defendant about the construction of a building on the northwest corner of Wall and Water streets, in the borough of Manhattan. In the center of this building was placed a derrick, used in hoisting the ironwork which entered into its construction.

Deceased was one of the ironworkers, and, on the day when the accident happened, he was ordered by a subforeman to get on the ball of the derrick, go to the street, and attach to the derrick an iron column, to be placed in the building. This method of operation was such as had been in common use during the progress of the work. Another workman was ordered to go with him, and both of them got upon the ball or hook when the boom to which it was attached was swung around, and when it had proceeded for some distance the entire derrick collapsed, producing the injury resulting in the death of deceased. The derrick in question had a mast 35 feet in height, and a movable boom 55 feet long. Attached to the mast was a stiff leg, some 46 feet in length, which came down 30 feet back of the mast. From the top of the mast ran guys in different directions to support the same. Just how many and where they ran does not clearly appear from the evidence in the case. Taking the testimony as a whole, it is quite likely that at first there were five or six of these guys, and later four, as one witness, and practically the only one, describes them as running in four directions, to different corners of the building. The length of the boom made it impossible to move the same past these guys, and, to avoid this difficulty, the guys were provided with block and tackle, which could be easily removed, and the boom allowed to swing by. The boom itself was moved up and down by power from a stationary engine, and was swung around from right to left and left to right by "tag lines." These were under the control of two men, one on each side, whose duty, among other things, was to stop this boom when it had swung beyond a detached guy rope so that it could be replaced. On the day of the accident the deceased had been working upon the second tier of the building for a considerable time, and the boom had been swung to the west, when he was ordered to get upon it. At that time all the guys on that side of the derrick had been removed to allow this boom to swing by, and there was only one guy supporting the entire structure, together with the stiff leg. When the boom had been raised for the deceased and Pihlgardt to get on, it was then swung around. The weight, having nothing to sustain it, caused the derrick to fall. It appears from the testimony of at least three of the witnesses (the engineer, an ironworker, and an expert) that a derrick of this sort should be supplied with two stiff legs. The engineer says:

"In all my experience on other work from time to time, I have not seen derricks of this character used for the kind of work that this was used for. In the experience that I have had with stiff-legged derricks, I have seen that they had two wooden legs. * * * That is the usual kind of a guy derrick, —a high mast, so that the boom will swing around underneath the guys, clear of the mast. You could not have put guy lines on a derrick like that, so that you could have the boom working inside of the guy lines. It would not make any difference how high the mast was, if it was built on the style of a stiff-legged derrick. If the boom was longer than the mast, the boom could not pass underneath it. It would not have been possible upon this job to have had a derrick with a high mast, and fastened by steel guys, so that the boom would swing inside the guys. I do not think a guy derrick could be used that way. In the first place, they have not the foundation to secure the derrick. The guy derrick would have to have somewhere to make the

guys fast to, so that it would be almost impossible to use a guy derrick in that cellar at the time of erection. This style of derrick would be the only kind that I know of that could be used with any advantage."

One of the ironworkers on the building says that the usual method of construction of a derrick used for work of this character is to have two stiff legs. Olson, an expert on the strength and construction of derricks, testified that a derrick such as the evidence showed this one to be would not be well constructed to perform work of this character, and that "the proper construction would have been another leg." This witness not only gave his opinion as to what would constitute proper construction of a derrick used as this one was used, but he also described the method and manner of use, the character of different constructions, the office which the supports played,— whether guys or stiff legs,—the points at which the strain would come, and what construction would be proper in such a case. This evidence was therefore competent, without regard to whether its inherent character authorized the expression of an opinion by the expert as to whether it was good construction or not, or whether it fell within the class which authorized descriptive testimony, only leaving it for the jury to draw conclusions therefrom. If we assume that it did not fall within the class of cases authorizing expert testimony to be given, yet, as no objection was taken thereto, and the defendant acquiesced in its acceptance, it might be considered, even though upon objection it might have been excluded; and, as it was followed up by a full and complete description of the entire subject-matter,—the effect and character of the operation,—it was before the jury for consideration, and they were authorized to draw a conclusion therefrom that the derrick was improperly constructed, within the rule announced in Dougherty v. Milliken, 163 N. Y. 527, 57 N. E. 757, 79 Am. St. Rep. 608. This evidence was therefore in the case, and, if negligence could be predicated thereon, it was not the province of the court to determine the question, as it would be error to withhold its submission from the jury.

It cannot be doubted but that it became the duty of the master to furnish reasonably suitable, safe, and adequate machinery and appliances for the performance of this work. Such duty is an absolute one, which may not be delegated by the master to another, and in the performance of such obligation the master cannot exonerate himself from liability for the intervening negligence of a servant to whom its discharge has been committed. Oties v. Aluminum Co. (Sup.) 7 N. Y. Supp. 251, affirmed on appeal in 130 N. Y. 639, 29 N. E. 151. This being the measure of the defendant's obligation imposed by law, if he failed therein, and injury resulted on account of such failure, then, in the absence of contributory negligence, or of a risk assumed by the deceased in and about the performance of the work, liability would attach, and the jury would be authorized to find negligence and award damages. In view of the testimony that the construction of the derrick was improper for the purpose for which it was used, it is not permissible, as matter of law, to say that the method employed to support the derrick was the usual and proper one in this kind of work. On the contrary, the evidence given by the plaintiff tended to show the exact

reverse, and if the jury had found such to be the fact, and there was no intervening negligence or risk assumed, the court was not authorized to dismiss the complaint, but, under well-settled rules, was required to submit the question thus presented for determination to the jury. Aside, however, from this question, we think the evidence was of such a character as to authorize the jury to say that the construction of this derrick, under the circumstances of this case, was in violation of the provision of section 18 of the labor law. So far as important to a consideration of the question presented by this record, the statute reads:

"A person employing or directing another to perform labor of any kind in the erection * * * of a house, building or structure shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, * * * or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged."

This section has been the subject of construction many times, and thereunder it is held that the absolute duty is imposed upon the master to furnish safe and suitable appliances, as provided in the statute, for the use of his employés; that, as the duty to furnish is absolute, it is also a continuing obligation, which may not be delegated, and from which at all times the master may not shelter himself from responsibility unless the obligation be at all times fulfilled during the entire period that the contrivance is in use. Such is the construction placed upon the statute by the supreme court (Stewart v. Ferguson, 34 App. Div. 515, 54 N. Y. Supp. 615; McLaughlin v. Eidlitz, 50 App. Div. 518, 64 N. Y. Supp. 193; Stewart v. Ferguson, 52 App. Div. 317, 65 N. Y. Supp. 149), and such construction has received the sanction of the court of appeals in the last-cited case (164 N. Y. 553, 58 N. E. 662). In disposing of the question, the court of appeals say, "Section 18 is a positive prohibition laid upon the master, without exception upon account of his ignorance or the carelessness of his servants." Applying this rule to the facts of this case, it clearly appears that the derrick is to be regarded as a hoist and mechanical contrivance, and is therefore brought squarely within the provisions of the statute, in consequence of which there attached to the defendant the absolute duty imposed by the statute. We think it may not be said that this duty was discharged by the master as matter of law. The construction of a derrick, whereby in its operation it became necessary to remove a large proportion of its supports, and make its safety in operation depend upon the watchfulness and care of a fellow servant in properly restraining the swinging of a boom, which, if neglected, would cause a collapse of the whole structure, furnishes, it seems to us, authority for a jury to say that such construction was not proper or suitable to give proper protection to the life and limb of the defendant's employés. And when it be considered that evidence offered upon the part of the plaintiff tended to establish as an affirmative fact that such construction was improper, and the situation admitted of its being properly supported, so that its operation would be safe, we are of opinion that a case was made which could only be disposed of by the verdict of a jury. Under such circumstances, as the authorities above cited clearly

establish, if it be found that the defendant failed to discharge the obligation imposed upon it by the statute, the concurring negligence of a co-servant in matter of operation furnishes no defense and is no shield to the liability imposed thereby. Consequently it seems to follow that the court was not authorized to dismiss the complaint for this reason. Some reliance is placed by the defendant upon the case of Rosa v. Volkening, 64 App. Div. 426, 72 N. Y. Supp. 236, but in that case the statute to which we have referred was not considered, nor was it adverted to. The case was disposed of on the ground of assumed risk. It may be that the facts therein appearing authorized the conclusion which the court reached, but we should hesitate in application of its doctrine to a case such as the present, whether it be considered in application of the statute, or of the general ground of negligence which we have first considered. Nor does Dougherty v. Milliken, supra, have any application. The question presented in that case was simply as to a rule of evidence, and there was neither discussion or determination of any question aside therefrom. The statute was not even adverted to, nor was the general rule of law relating to the obligation of the master under the doctrine of negligence founded upon a duty independent of the statute determined or passed upon. It simply holds that a case was not presented for the expression of an opinion by an expert, independent of a description of the appliance, where from such description the jury would be able to pass upon the question equally with the expert. We have already pointed out the distinction between that case and the present, and it is not needful that further attention be called thereto. Nor does the case of Clark v. Ritter-Conley Co., 39 App. Div. 598, 57 N. Y. Supp. 755, bear upon the question now before us. Therein there was no defect in any appliance furnished by the master. On the contrary, the accident was occasioned by a failure of the co-employés to make use of guys which might have been attached to the iron plates which were being raised. The accident was produced by the plate catching upon some projecting rivet or bolt head, and the strain, after the plate was so caught, upon the derrick, caused it to break. Had the guys been attached, it could have been pulled away from the tank and avoided being caught. It is clear that this was a mere detail of the work, and involved no question of failure upon the part of the master to furnish safe and suitable contrivances and appliances. On the contrary, it appeared that it completely discharged its duty, and that the accident was the neglect of a co-servant in failing to make use of the appliances furnished. In the present case it can be said that such obligation was not discharged, and that the accident was due to such fact. Of course, a cause of action is not made out by merely showing that the defendant was guilty of negligence, under the general rules of law relating thereto, or that it failed in discharge of its obligations imposed by the statute. Assuming that it did not perform either obligation, no recovery could be had unless the plaintiff established the absence of contributory negligence, or such a state of facts as relieved him from the assumption of risk in connection with the employment. If the plaintiff was guilty of contributory negligence, or if the master discharged its full duty, and the accident was the result of the negligence of a co-employé,

it would exonerate the defendant from liability; the question in this respect being, did the master discharge the obligations resting upon it? If so, was the accident the result of the contributing negligence of the deceased or of a fellow servant? And if either, the defendant would not be liable. But these are all questions of fact, and, under the evidence, were required to be submitted to the jury. If the deceased knew the character of the construction and the dangers to be incurred in methods of operation,—had full knowledge upon the subject,—or the method of operation and the character of the structure were open, visible, and apparent, it would be within the province of the jury to say that he assumed the risk of the employment, even though the master failed in the discharge of his obligation. Stewart v. Ferguson, 34 App. Div. 515, 54 N. Y. Supp. 615. But these, like the others, are questions of fact for determination by the jury, and not the court.

These are all the questions which this case presents, and, as we conclude that the case should have been submitted to the jury, the exceptions should be sustained and the motion for a new trial granted, with costs to the appellant to abide the event.

PATTERSON, O'BRIEN, and LAUGHLIN, JJ., concur.

McLAUGHLIN, J. I am unable to concur in the opinion of Mr. Justice HATCH. The fall of the derrick was not due to any fault or neglect of the defendant. It is not claimed that the derrick was defective or out of repair, and there is no basis whatever for the assertion that it was not properly constructed, considering the work that was being done. The cause of the accident is clear. The mast of the derrick was sustained by guy ropes which were so arranged that they could be removed from time to time as the work progressed and occasion required. When they were removed, it was made the duty of one of the intestate's fellow workmen to replace them before the boom of the derrick was again moved. A "tag line" was also attached to the boom, which line was held by another fellow workman, by the name of Hanson, whose duty it was not to permit the boom to be moved until the guy ropes had been put in place. Each of these fellow workmen failed to perform the work assigned to him. Hanson let go of the tag line, and by reason thereof the boom swung around; and, the other fellow workman having neglected to put the guy ropes in position, the derrick collapsed. How the defendant can be held liable under such circumstances, I am unable to conceive. The accident was directly due to the negligence of a co-servant, and nothing else. Nor do I think that section 18 of the labor law, so called, upon the facts here presented, has any application whatever.

The exceptions of the plaintiff should be overruled, and judgment entered dismissing the complaint.