the unfortunate occurrence which is the subject of this suit. No expert evidence was introduced in relation to the custom in other yards, nor was any offered, bearing upon the probable efficiency of this or any other proposed rule. The yard gang consisted of six or seven men, who at times worked somewhat close together, but at other times were widely scattered through the yard.

We are unable to distinguish this case from that of Corcoran v. N. Y., N. H. & H. R. R. Co., 77 App. Div. 505, 78 N. Y. Supp. 953, recently decided in this department. There the plaintiff was a member of the yard gang of some four men working in the railroad yards of the defendant company. Snow had fallen, and at the time of day when the accident occurred the atmosphere was so full of snow that it was difficult to see more than three or four car lengths ahead. The yard gang was somewhat scattered over the yard, cleaning snow from the switches, and two freight cars were being shunted through the yards. As they approached the plaintiff, the brakeman in charge of the cars shouted, as did another employé of the defendant, who happened to be standing near. He did not hear, and suffered a collision with the freight car and was injured. It is made to appear by the opinion of Mr. Justice Jenks in the Corcoran Case that there was no expert evidence upon the question of the workability of the rules suggested, and it was held that under the circumstances of that case the propriety and necessity of promulgating a rule that some other employé be detailed to keep constant watch over the plaintiff is not so obvious as to make the question one of common experience and knowledge; and the nonsuit was unanimously affirmed. The state of the record in the case at bar is similar. It is probable that at the time the plaintiff was hurt the gang was working more closely together than the yard gang happened to be at the moment Corcoran was hurt; but a comparison of the situations surely reveals that the plaintiff in the Corcoran Case was in a place of greater danger at the time he was hurt than was the plaintiff here when he received his injury.

The rule there must control us, and we reverse the judgment and order appealed from on the authority of that case.

Judgment and order reversed, and new trial granted, costs to abide the event. All concur, except WOODWARD and MILLER, JJ., who dissent.

---

## REGAN v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. November 28, 1906.)

1. EVIDENCE—OPINION EVIDENCE—EXPERT TESTIMONY.

On an issue as to whether a brake with which a street car was equipped was a safe and suitable one, it was error to permit an expert witness to testify that such brake could not "uniformly" be relied on to stop the car.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2317.]

2. SAME.

On an issue as to whether the derailment of a street car was due to the insufficiency of the brake or to the fact that the brake was not applied soon enough, an expert was asked if a motorman used the brake, and failed to stop the car in a certain distance, what in his opinion was the cause

thereof, to which he replied, "The insufficiency of the brake." *Held*, that it was error to admit such testimony, as, under proper expert testimony respecting brakes and their operation, the jury could have determined the cause of the accident.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 2334, 2336.]

Appeal from Trial Term, Kings County.

Action by Jeremiah Regan against the Brooklyn Heights Railroad Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, GAYNOR, RICH, and MILLER, JJ.

I. R. Oeland, for appellant.
John Burlinson Coleman, for respondent.

MILLER, J. The defendant appeals from a judgment entered upon a verdict for personal injuries and from an order denying a motion for a new trial. The injuries were the result of the derailment of a flat car. The plaintiff was the defendant's servant. The derailment was caused by a derailing switch, and resulted from the failure of the motorman to stop the car before reaching the switch, either because the brakes were not applied soon enough or because they were insufficient, and, of course, the plaintiff had to establish the latter theory to recover. The brake in question was known as the "standard lever" brake, and was operated with a ratchet by hand. It had been in use by the defendant on cars similar to the one in question some six years, and according to the defendant's evidence, which is undisputed, had worked satisfactorily. It appeared that standard lever brakes differed in weight and strength, but there was no testimony as to the size and strength of the brake in question.

There was evidence that the particular car in question had been in the shop for repairs the day before the accident, and that a new tension spring was placed on the brake, designed to throw the brake away from the car wheel when the ratchet was released, but there is no evidence tending to show that the brake was not in perfect working order when the accident occurred, or that it was unsuitable for use on the car at the place in question, unless such evidence was furnished by the testimony of an expert witness, who was permitted to testify, over objection, that a standard lever brake could not uniformly be relied upon to stop the car in question under the conditions stated. After giving said testimony, the witness was then asked this question:

"Q. If a motorman used this method [referring to the method of applying the brake] on a car such as has been referred to in the previous question, and failed to stop the car in a distance equal to that from a short distance after crossing Fifth avenue to the derailing switch between Fifth and Fourth avenues, what in your opinion would be the cause of such failure?"

Over objection, the witness was permitted to answer:

"A. In my opinion it would be due to the insufficiency of the brake apparatus."

It is evident that the latter ruling was inadvertent, because the court subsequently sustained an objection to practically the same question put by the defendant to its expert, remarking, "That is a question for the jury to determine." It is evident that this judgment must be reversed because both of said rulings cannot be sustained, and, as this expert evidence saved a nonsuit, it cannot be said that the ruling was harmless. There may be some difficulty in particular cases in determining when an expert shall be limited to the statement of facts not within common knowledge, leaving the jury to draw the inference or conclusion therefrom, and when the expert may testify both as to said facts and the conclusion to be drawn from them. See Dougherty v. Milliken, 163 N. Y. 527, 57 N. E. 757, 79 Am. St. Rep. 608; Finn v. Cassidy, 165 N. Y. 584, 59 N. E. 311, 53 L. R. A. 877; Jenks v. Thompson, 179 N. Y. 20, 71 N. E. 266.

For the purposes of this case it may be assumed that a qualified expert might give an opinion on the adequacy and suitability of a given style of brake for use in a given manner, because we are of the opinion that that is a subject respecting which an expert would be much more likely to form a correct opinion than would a person of ordinary experience, even were all the facts before him. In this case the witness was permitted to state that the brakes in question could not uniformly be relied upon. The question was whether the defendant had used reasonable care to furnish a reasonably safe and suitable appliance, not whether the appliance furnished could uniformly be relied upon to do the work for which it was designed. Accidents are likely to occur to any machine, and an expert might testify, without committing perjury, that a safe and suitable appliance could not uniformly be relied upon, depending upon what he meant by the word "uniformly." We think that the exception to this evidence presents reversible error, as does also the exception to the expert evidence to the effect that the particular accident was due to the insufficiency of the brake apparatus. If proper expert testimony respecting the different kinds of brakes, their method of operation, and their adaptability to different situations had been admitted, the jury, as well as the expert, could have determined upon such evidence, together with the evidence respecting the circumstances surrounding the occurrence, the cause of the accident; and it was not proper to allow an expert to say whether the accident was due to the fault of the motorman or that of the brakes.

The judgment and order must be reversed and a new trial granted, costs to abide the event. All concur.