tors should sooner sell the same under the power which he gave them. It is not absolutely necessary to sell for the purpose of distribution until the death of the widow, and therefore conversion from necessity to carry out the provisions of the will does not arise until that time.

These conclusions lead to a direction of judgment in favor of plaintiff only for the share of Minnie H., his deceased wife, in the $68,750, the proceeds from sale of real property sold before her death, and to a holding that plaintiff is not entitled to any interest in the remaining parcels of real property; and judgment is directed accordingly, without costs. All concur.

FERDON v. NEW YORK, O. & W. RY. CO.

(Supreme Court, Appellate Division, Third Department. March 10, 1909.)

1. RAILROADS (§ 113*) — CONSTRUCTION OF ROADBED — LIABILITY FOR NEGLIGENCE.

Where a railroad company, in constructing an additional track and widening its roadbed for that purpose, acts in pursuance of legislative authority and for the accomplishment of a work of public utility, having acquired the necessary private rights of owners, it is liable only for negligence in the construction or for want of due skill and care in doing its necessary work, so as to avoid injury reasonably to be anticipated; but the work must be done strictly in conformity to the rights of private owners, in a manner not unnecessarily injurious to them, and subject to the same responsibilities as though done by an individual.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 353; Dec. Dig. § 113.*]

2. WATERS AND WATER COURSES (§ 78*)—CONSTRUCTION OF RAILROAD—WIDENING OF ROADBED—DIVERSION OF WATER—REASONABLENESS OF PLAN.

In an action against a railroad company for damages to plaintiff's land from flooding, alleged to be caused by the widening of defendant's roadbed by filling in along the side of a river on the opposite side of which plaintiff's land abutted, thereby diverting the water of the stream, it was a question for determination whether the railroad company, in the lawful exercise of its right to built an additional track, might have accomplished the purpose without injurious consequences to plaintiff by some other method or plan of construction, and whether, having due regard for the rights of others, it should in reason and fairness have adopted such other plan.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 69; Dec. Dig. § 78.*]

3. EVIDENCE (§ 529*) — OPINION EVIDENCE — SUBJECTS OF EXPERT EVIDENCE — RESULT OF ENCROACHMENT ON STREAM.

In an action against a railroad company for damages to plaintiff's land from flooding, alleged to be caused by the widening of defendant's roadbed by filling in along the side of a river opposite plaintiff's land, where it was a serious question whether the flooding was occasioned by the filling or by freshets, and one of the questions to be decided by the jury was the cause of the changing of the deep channel of the river from the side of the railroad to the bank adjoining plaintiff's land, on which the evidence was conflicting, testimony of witnesses that it was caused by defendant's filling in of the river, amounting merely to expressions of opinion and deductions from facts, imparting no information which could not be given by a statement of the facts, and not based on scientific knowledge, was inadmissible, since conclusions of expert witnesses may only be given in evidence when the conclusions, as well as knowledge of the facts from

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which they are drawn, depend upon professional or scientific information or skill, not within the range of ordinary training or intelligence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2338; Dec. Dig. § 529.*]

4. APPEAL AND ERROR (§ 1050*)—REVIEW—HARMLESS ERROR—ADMISSION OF IMPROPER EXPERT TESTIMONY.

The evidence upon a question being evenly balanced, the improper admission of expert testimony was prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4153; Dec. Dig. § 1050.*]

Chester, J., dissenting.

Appeal from Trial Term, Sullivan County.

Action by John S. Ferdon against the New York, Ontario & Western Railway Company. Judgment for plaintiff, and defendant appeals. Reversed, and new trial granted.

The complaint alleges that the defendant is a railroad corporation, duly organized and incorporated under the laws of the state of New York and operating a railroad through the town of Rockland, Sullivan county, N. Y.; that the plaintiff is the owner of a farm on the easterly side of the Beaverkill river; that defendant is and for more than 20 years has been the owner and in possession for the purposes of its railroad of a strip of land adjacent to said Beaverkill, on the westerly side thereof, and opposite plaintiff's farm; that said railroad was constructed about the year 1872, and has since been operated by the defendant along and upon its premises aforesaid; that since the construction of said railroad the defendant has at divers times, and particularly in the years 1901, 1902, and 1903, thrown into said stream large quantities of dirt, rock, and débris, and has thereby wrongfully diverted the stream from its natural course and channel, partially filling the same and causing the waters to flow over and upon plaintiff's premises. Judgment is demanded that an injunction be granted restraining the defendant from further interference with the stream and for the damages which the plaintiff has sustained.

Plaintiff was formerly the owner of land on both sides of the river, and in 1871 conveyed in fee to the predecessor of the defendant a portion thereof, "of the width of 100 feet, being 50 feet on each and either side of the center line of the railroad of said company as the same is staked and located and indicated upon a map of such location on file in the office of the clerk of the county of Sullivan," being the land on which defendant's railroad is built on the westerly side of the river, and opposite the portion of plaintiff's land still owned by him, and which in this action he claims to have been damaged by the acts of the defendant. The land thus conveyed skirted the river, and at some points included the waters adjacent to the shore thereof. It consisted for several hundred feet of a mountainous and rocky slope, extending to the water's edge, through which the railroad was cut. The river at the point in question is about 140 feet wide, and as it flows down stream increases quite rapidly in width. In the year 1904 defendant double-tracked its said railroad. In the years 1901, 1902, and 1903, for the purpose of widening its roadbed for such additional track, it conducted blasting operations in the rock cut above mentioned, and threw the accumulated rock and débris over the easterly edge of its railroad and into the river, thereby extending into the river the embankment of its roadbed. No effort was made at the trial to fix definitely the extent of such encroachment; but plaintiff's surveyor estimated that the embankment extended 15 or 20 feet into the river. In each of those years freshets occurred, and the water overflowed and damaged plaintiff's farm. It is the contention of plaintiff that the filling in of the river by defendant on the westerly side thereof turned the current and channel of the stream and caused the water to flow upon his premises. Hence his alleged grievance.

At the close of the testimony the court submitted to the jury the following questions: "(1) Did the defendant, during the spring and summer of 1901,

---

1902; and 1903, by the enlargement or repair of its roadbed, or in any other way, dump rock, dirt, and other materials into the channel or bed of the Beaverkill river,.at or adjacent to Carpenter's eddy, so as to materially fill up and narrow the channel or bed of the river at that point? (2) If the answer to the first question be 'Yes,' did such filling or narrowing of the channel cause the water to change its natural and ordinary course during times of high water in 1901, 1902, and 1903, or in either of said years? (3) Were the plaintiff's premises damaged by the floods of December, 1901, September, 1902, and October, 1903, or by either of them? If so, to what amount in dollars and cents? What was the damage, if any, to the plaintiff's crops by the flood of 1902? (4) Was such damage caused solely by the changing of the course of the river by the act of the defendant? (5) Or was such damage caused by the high water, irrespective of the act of the defendant?" All those questions were answered by the jury favorably to the plaintiff, and they fixed the damages to his premises for the three years at $500 and to his crops at $150. The court in its decision adopted these findings, and made additional findings, and directed judgment in favor of plaintiff for the sum of $650. From this judgment, defendant appeals.

'Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

George H. Carpenter, for appellant.
Frank S. Anderson, for respondent.

COCHRANE, J. Plaintiff conveyed to the defendant for the purpose of a railroad the property where the alleged wrongful acts were committed. It is apparent from the language of the grant that plaintiff understood and intended that it should be so used. The defendant, in constructing an additional track and in widening for that purpose its roadbed, was acting in pursuance of legislative authority and for the accomplishment of a work of public utility. In such a case, where it is acting within legislative authority and has acquired the. necessary private rights of owners, it is well settled that it is only liable for negligence in the construction, or for want of due skill and care in so arranging or accomplishing its necessary work as to avoid injury reasonably to be anticipated. Uline v. New York Central & Hudson River Railroad Company, 101 N. Y. 98, 4 N. E. 536, 54 Am. Rep. 661; Bennett v. Long Island Railroad Company, 181 N. Y. 431, 74 N.. E. 418; Conklin v. New York, Ontario & Western Railway Company, 102 N. Y. 107, 112, 6 N. E. 663; Bellinger v. New York Central Railroad, 23 N. Y. 42; Conabeer v. New York Central & Hudson River Railroad Company, 156 N. Y. 474, 51 N. E. 402. Under the foregoing authorities the defendant was justified .in the construction of an additional track for its railroad, and, if it properly and reasonably exercised such right of construction, any damages· to plaintiff necessarily arising therefrom would be merely incidental or consequential, and not of such a character as to render the defendant liable therefor.

But. the defendant could not arbitrarily or capriciously exercise such right of construction in a manner unnecessarily injurious to plaintiff. The authorities cited do·not go to that extent. Whether defendant should have widened its roadbed on the side more remote from the river, or whether it extended its embankment in the river to an unnecessary extent, or whether some other method of construction should have been adopted, were questions.for the consideration of the trial

court in determining whether defendant had in a reasonable manner and with due regard for plaintiff's rights constructed its additional track. Although the right of defendant to build such track and to do .all things necessary for the maintenance and preservation of its property cannot be questioned, nevertheless such right was subject to the exercise thereof in strict conformity to the rights of private owners and subject to the same responsibilities as though such right of the defendant were being exercised by an individual. Booth v. Rome, Watertown & Ogdensburg Terminal Railroad Company, 140 N. Y. 267, 35 N. E. 592, 24 L. R. A. 105, 37 Am. St. Rep. 552. In the case last cited it was stated tersely and comprehensively:

"The test of the permissible use of one's own land is not whether the use or the act causes injury to his neighbor's property, or that the injury was the natural consequence, or that the act is in the nature of a nuisance; but the inquiry is: Was the act or use a reasonable exercise of the dominion which the owner of property has by virtue of his ownership over his property, having regard to all interests affected, his own, and those of his neighbors, and having in view, also, public policy?"

The question of the reasonableness or unreasonableness of the defendant's acts in casting its débris into the river, having reference to the necessity of widening the roadbed for an additional track, or having reference to the proper maintenance and protection of its property for the convenience and safety of the traveling public, was not determined, and seems not to have been considered, at the trial. Plaintiff's theory of the action was that defendant was liable, irrespective of any question of unreasonableness in the use of its property, provided only its acts caused the water to flow over plaintiff's premises. That theory is untenable. The court did not go far enough in its determination to fasten liability on defendant. There is some evidence that defendant cast its débris beyond the boundary limits of its property; but the evidence fails entirely to satisfactorily establish that such quantity was sufficient to accomplish all the mischief of which plaintiff complains. It may be that defendant, in the lawful exercise of its right to build an additional track, might have accomplished such purpose without injurious consequences to plaintiff by some other method or plan of construction, and that, having due regard for the rights of others, defendant should in reason and fairness have adopted such method or plan. That criterion should have been applied to the case at the trial, and because of the failure to do so it would seem that a reversal must follow.

There is another difficulty underlying this judgment. It is a very serious question whether the flooding of plaintiff's land was occasioned by filling in the river on the opposite side, or was due to the natural operation of the freshets. This point was strenuously combated by defendant. It appears both from the complaint and the evidence that the river is subject to great fluctuations in the quantity of water flowing therein, and to freshets, and to suddenly increased volumes of water. The freshet of 1901 was admitted by all the witnesses to have been the severest in many years. Two villages in the vicinity were flooded. Portions of land, in one instance several acres, were swept away. The railroad track was submerged, and a portion of the new

embankment recently constructed was destroyed. The contour of the stream seems to have been changed at various points. Naturally, and as appears by the evidence, a freshet of that kind would leave a condition which would be aggravated by subsequent occasions of high water. When that freshet occurred the work of filling in was far from completion, which fact adds to the possibility that plaintiff's damages were due to the natural operation of the freshet. There is evidence that prior to that freshet the channel was deep on the westerly side of the river, whereas on the easterly side plaintiff's premises sloped gradually into the river; the shallow water gradually increasing in depth. At the time of the trial the conditions were largely reversed, and adjoining plaintiff's premises was a deep channel. Witnesses were permitted to testify that the filling in on the railroad side of the river caused the washing out of the bed of the river along plaintiff's land. This testimony was received against the objection of defendant and exceptions were taken. This was one of the very points in controversy, and one of the questions submitted to the jury and answered by them. As stated by the learned trial justice to the jury, it was one of the crucial questions in the case and in giving such testimony the witnesses were deciding this branch of the case and transcending their proper functions. They possessed no scientific knowledge on the subject, and their answers were merely the expressions of opinions and deductions from facts which could only properly be deduced by the court or jury. Their testimony imparted no information which could not be given by a statement or narrative of facts.

The admissibility of opinions by expert witnesses has been several times recently before the court of last resort. Dougherty v. Milliken, 163 N. Y. 527, 57 N. E. 757, 79 Am. St. Rep. 608; Schutz v. Union Railway Company, 181 N. Y. 33, 73 N. E. 491; Welle v. Celluloid Company, 186 N. Y. 319, 79 N. E. 6. From those cases it appears that conclusions of expert witnesses may only be given in evidence when such conclusions, as well as knowledge of the facts from which such conclusions are drawn, depend upon professional or scientific information or skill not within the range of ordinary training or intelligence, and that the knowledge which the witness possesses exists in reasons or argument, rather than in descriptive facts, and cannot, therefore, be intelligently communicated to others, so as to acquaint them with a full understanding of the subject. If the subject is one concerning which scientific knowledge can only be imparted in the form of reasons or opinions to those not informed as to the particular science, then such evidence may be given. It is apparent in the present case that the opinions of these witnesses were based on nothing but facts easily susceptible of description, and in going beyond such facts the witnesses were clearly invading the province of the court. The question for determination was whether the change in the river was due to filling in the westerly edge thereof. The jury, as well as the witnesses, could answer that question after hearing all the facts bearing thereon. The witnesses did not state merely that filling in the river caused a displacement of the water, but in effect that it caused the deep channel of the river to be changed from the extreme westerly side, adjacent the railroad, to the extreme easterly side, adjacent the farm of plain-

tiff, a distance of about 140 feet. As this evidence was directed to a question concerning which the evidence was quite evenly balanced, it cannot be overlooked. As was said in Welle v. Celluloid Company, supra:

"In a close case an erroneous admission of such opinion evidence may very seriously prejudice a defendant."

The judgment must be reversed on the law and facts, and a new trial granted, with costs to the appellant to abide the event.

KELLOGG and SEWELL, JJ., concur. SMITH, P. J., concurs in result. CHESTER, J., dissents.