■ GRACE M. HNAT, as Limited Administratrix of the Estate of JOHN J. HNAT, Deceased, Appellant, v. NYACK HOSPITAL, Respondent.— In a wrongful death action, judgment of the Supreme Court, Rockland County, entered April 21, 1971, affirmed, without costs. No opinion. Munder, Acting P. J., Gulotta, Christ and Benjamin, JJ., concur; Shapiro. J., dissents and votes to reverse and to order a new trial, with the following memorandum: When plaintiff administratrix rested her case, her complaint was dismissed on the ground that she had failed to prove any actionable negligence on the part of defendant hospital. The majority of this court, in affirming that dismissal, must necessarily be determining that, even giving the plaintiff the most favorable

inferences that can be reasonably drawn from her proof, she failed as a matter of law to make out a prima facie case (*Andersen* v. *Bee Line*, 1 N Y 2d 169; *Langan* v. *First Trust & Deposit Co.*, 293 N. Y. 604, 607; *Dillon* v. *Rockaway Beach Hosp. & Dispensary* 284 N. Y. 176; *Kraus* v. *Birnbaum*, 200 N. Y. 130, 133; *Consalvo* v. *Grosso*, 35 A D 2d 791). I cannot concur in that conclusion. The deceased (whom for convenience I shall hereinafter call the plaintiff) entered defendant hospital as a private patient. He underwent an operation on March 7, 1962. Dr. Massouras, an employee of the hospital, first saw the plaintiff at about 9 A.M. on March 10, 1962. At about 10:30 P.M. on the same day he was called to the plaintiff's room by the nurse in charge because the plaintiff "was disoriented" and "confused". He arrived about two or three minutes after being summoned and found the plaintiff to be "disturbed", "a little disoriented" and in a deteriorating condition. With full knowledge that his patient was disoriented, confused and disturbed and was deteriorating, the doctor left the patient's room, taking the nurse with him so that he could telephone Dr. Knight, plaintiff's personal physician. Placing the call took about two or three minutes, and when he reached Dr. Knight he explained (in a five minute conversation) that "the patient is getting worse. I told him that he is a little confused and is not happy with tubes." After that conversation Dr. Massouras went to wash his hands and the next thing he knew the patient was out of his bed, completely in the nude and had "pulled all the tubes out * * * the tube that he had in the nose, the I. V. tube; the tubes that had fluids going into the vein; the catheter that was in the bladder." There is a dispute in the record as to whether bedrails attached to the plaintiff's bed were up at the time that Dr. Massouras examined him, the latter saying they were and the plaintiff's wife and daughter saying that when they left the patient at about 9:10 P.M. the rails were down. Defendant concedes that this dispute would normally create an issue of fact, but it contends that, since there is no testimony in the record that plaintiff's personal physician ever ordered any bedrails, the resolution of that factual issue is immaterial. Defendant in taking that position relies upon *Schacter* v. *Doctors Hosp.* (34 A D 2d 760) and *Mossman* v. *Albany Med. Center Hosp.* (34 A D 2d 263). In my opinion, those cases have no bearing on the situation for there the defendant hospitals were not put on notice of any new condition calling upon them to take different or other measures than those prescribed by the plaintiff's personal physician. Here the fact pattern is entirely different. Dr. Knight, prior to the telephone call, did not know that the patient was "disoriented", "confused" and "disturbed", and that his condition was "deteriorating". Those facts were known only to the hospital through the nurse in charge and its employee, Dr. Massouras. Under such circumstances, I cannot accept defendant's contention that the failure to adduce expert testimony to show a departure from accepted medical practice is fatal to plaintiff's case.* An expert is called to give testimony on subjects which are beyond the experience of the average man (*Dougherty* v. *Milliken*, 163 N. Y. 527, 533; *Meiselman* v. *Crown Hgts. Hosp.*, 285 N. Y. 389, 396; *People* v. *Kenny*, 36 A D 2d 477), but presumably the ordinary juror would know that a person who is confused, disturbed and disoriented and whose condition is deteriorating is quite capable of harming himself and that, having such a patient in its charge,

---

*Plaintiff did in fact put a doctor on the stand to attempt to prove that the failure to place him in a strait jacket or to restrain him by straps constituted negligence, but was unable to do so because objections to questions directed to that end were sustained, and properly so, because of their phrasing.

a hospital, cognizant of its responsibilities, would take the necessary steps to guard the patient against himself by restraining him in some proper manner. In this connection, too, the record reveals that Dr. Massouras admitted that "sometimes we put them in straps" after a surgical operation. Is it too much to hold that a hospital, fully aware of such a patient's mental condition, is at least prima facie negligent and that it is called upon to come forward with an explanation as to why it did not take steps to restrain the patient from harming himself (cf. *Ranelli* v. *Society of N. Y. Hosp.,* 269 App. Div. 906, 907, affd. without opinion 295 N. Y. 850, 852)? I think not. I therefore vote to reverse the judgment appealed from and for a new trial.