### STEWART v. FERGUSON.

(Supreme Court, Appellate Division, First Department. June 8, 1900.)

MASTER AND SERVANT—NEGLIGENCE—DEFECTIVE SCAFFOLDING.

Under Laws 1897, c. 415, § 19, providing that any person employing another to perform labor in the erection of a building should furnish safe scaffolding, constructed to bear four times the maximum weight required to be put on it when in use, the collapse of a scaffold having thereon only

the weight required for the purpose for which it was constructed was
prima facie evidence of the employer's negligence.

McLaughlin and Ingraham, JJ., dissenting.

Appeal from trial term, New York county.

Action by Thomas C. Stewart, administrator, against John W.
Ferguson. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and HATCH, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

John Vernon Bouvier, Jr., for appellant.
Edward P. Lyon, for respondent.

RUMSEY, J. This case has been twice heard upon appeal, and
is reported in 34 App. Div. 515, 54 N. Y. Supp. 615, and 44 App.
Div. 58, 60 N. Y. Supp. 429. We see no reason to change the rules
laid down in those opinions, especially as our interpretation of the
statute has been adopted by the Second department in the case of
McAllister v. Ferguson (Sup.) 64 N. Y. Supp. 197, where the liability of this defendant was in question for an injury received by
another workman by the falling of the same scaffold by which Stewart was killed, and also in the case of McLaughlin v. Eidlitz (Sup.)
64 N. Y. Supp. 193,—each decided at the April term, 1900. The
uncontradicted testimony is that the scaffold was built on the afternoon before it fell, and that while it was in process of construction,
and before the builders ceased work upon it, Stewart, the plaintiff's
intestate, a mason in the employ of the defendant, and who had
taken some slight part in its construction on the previous day, was
ordered by one Montague, the defendant's foreman, to go upon it,
and did so. There is no evidence to show that Stewart had any
knowledge or information as to the extent or kind of work done to
the scaffold after he had himself worked upon it. It appears, however, that, before it was completed, Montague, the foreman who was
in charge of the work, called away the men engaged in building
it while it was, in the opinion of those men, in a dangerous condition. Stewart worked on the scaffold on the afternoon of the 22d
but a short time. On the morning of the 23d the masons went to
work at the usual time, and at about quarter past 9 o'clock, suddenly and without warning, and without any cause, so far as appears, the scaffold gave way, and the men upon it fell with it, and
Stewart was killed, and McAllister seriously injured. It appears
affirmatively that at the time the scaffold fell there were at work
upon it four men, with two barrows of brick and two barrows of
mortar, and the undisputed testimony was that that amount of
material was required for the work of the men upon the scaffold.
The labor law forbade any person who employed another to perform labor in the erection of any building to furnish or erect, or
cause to be furnished or erected, for the performance of such labor,
a scaffold which was unsafe, unsuitable, or improper, and which
was not so constructed as to give proper protection to the life and
limb of the person so employed. Laws 1897, c. 415, § 18. In re-

spect of that matter it has been held in the cases cited above that, while the statute does not make the master a guarantor of the safety of the scaffold, yet the construction of it is his personal duty, as distinguished from the duty of the servant; and that the master is bound to use reasonable care to see that the scaffold furnished is not unsafe, but is safe and proper for the use for which it is intended; and that he cannot delegate that duty to another, and relieve himself from responsibility, merely by reason of the fact that he has selected a person of approved skill and fitness, and has furnished him with the material with which to do the work; but that, although that has been done, yet, if the scaffold is not suitable, or safe, or proper, the negligence, if any, in so building it, is the negligence of the master. Not only does the statute impose that duty upon the master, but it provides further that every scaffold shall be so constructed as to bear four times the maximum weight required to be put upon it when in use. Laws 1897, c. 415, § 19. This establishes a criterion of the safety of a scaffold, to which it is the duty of the master to conform; and if it appears that a scaffold which he has erected for the use of his employés does not possess the strength which the statute requires, the master clearly fails to do the duty towards his employés which the statute has imposed upon him. In respect to this matter the court charged the jury that under this statute the duty devolved upon the defendant to exercise reasonable care and precaution to furnish a safe scaffold for his workmen, and that the first question for them to determine was whether the defendant used proper care and reasonable precautions in furnishing the scaffold, and, if they found that he did, their deliberations were to cease there, and they were to find a verdict for the defendant. There is no complaint made as to the charge to the jury with respect of the question of contributory negligence, and it is clear that that question was properly submitted to them.

The only question in the case arises upon the refusal of the court to charge one of the requests asked by the defendant. That request was "that the happening of the accident created no presumption of negligence on the part of the defendant, but the burden is upon the plaintiff to establish by a fair preponderance of credible testimony that the falling of this scaffold was due to the negligence of the defendant, and without any negligence on the part of the decedent which contributed thereto." So far as the question of contributory negligence was concerned, the court had already charged that, if the decedent went upon the scaffold knowing it to be unsafe and defective, and having presented to his vision obvious risks, he was then guilty of contributory negligence, and assumed the risk, and cannot complain of the result. On that question the charge was as favorable as the defendant had the right to request, and the court was not called upon to repeat his charge in that regard. It is evident that the jury might assume from the charge that they were at liberty to say from the proof that the fall of the scaffold was of itself evidence of negligence on the part of the defendant, for they came into court, and asked the question, "If it has not been shown by the evidence that the scaffold was defective, can the defendant be held

liable by reason of its fall?" and they were in reply expressly told by the court that the falling of the scaffold, unexplained, raised a presumption of negligence on the part of the employer, and that presumption would justify a finding of negligence on the part of the defendant. Of course, the refusal to charge as requested must be taken in view of the duty which the law placed upon the defendant, and which he should have performed; and that was to furnish a safe, suitable, and proper scaffold, which was defined by the law to be one capable of sustaining four times the maximum weight to be placed upon it. Unless that was done, the defendant had failed in the performance of his duty. It appears, and is undisputed, that the defendant's manager called the men who were at work upon the scaffold away from it before it was completed. In the opinion of the man who was endeavoring to finish it, the scaffold was left in a dangerous condition. It is further in evidence, and undisputed, that the ordinary load which that scaffold should have borne was precisely that which was upon it; and it is an undisputed fact in the case that this scaffold, not overloaded, fell without apparent cause, and so suddenly that a witness describes its fall by saying that he heard a noise, and looked up, and the scaffold which had been there was there no longer; and the conclusion necessarily follows that the scaffold was not built in accordance with the requirements of the statute which imposed a certain duty upon the defendant. It is a settled rule of law that a violation of a statute is competent evidence to be submitted to a jury upon which they may base a finding of negligence, although it is not conclusive. Beisiegel v. Railroad Co., 40 N. Y. 9; Knupfle v. Ice Co., 84 N. Y. 488; McPeak v. Railroad Co., 85 Hun, 107, 32 N. Y. Supp. 647. As the violation of the statute and its effect in this case was undisputed, the jury would have been at liberty to find that the defendant was guilty of negligence because of that violation; and not only was the court right in refusing to charge that the happening of the accident which was the result of that violation created no presumption of negligence, and telling the jury that from the accident there arose a presumption of negligence, but it might have gone further, and said to the jury that upon the uncontradicted testimony in the case the negligence of the defendant was established.

But, even without resorting to the statute, upon the undisputed facts in this case the refusal to charge as requested and the explanation of the refusal were correct. It was held in the case of Green v. Banta, 48 N. Y. Super. Ct. 156, that the fact that a scaffold which had been provided by an employer for his servant to work upon gave way without any reason was prima facie evidence of negligence on the part of a person bound to provide a safe and proper scaffold. In that case the court had charged the jury that the fact that the scaffold gave way was some evidence—what might be called prima facie evidence—of negligence on the part of the person bound to provide the scaffold. That charge was approved by the general term, and the case was affirmed in the court of appeals (97 N. Y. 627) without opinion. Certainly the court of appeals sustained the proposition which was essential to the determination of the case. In the

case of Solarz v. Railway Co., 8 Misc. Rep. 656, 29 N. Y. Supp. 1123, it appeared that the defendant had furnished a scaffold upon which the plaintiff was called upon to work; that when he went upon it it fell, without any reason, so far as appears; and the court held and charged the jury that the unexplained breaking down of the scaffold made out a case sufficiently strong to go to the jury. That was affirmed in 11 Misc. Rep. 715, 32 N. Y. Supp. 1149, and again in 155 N. Y. 645, 49 N. E. 1104. So that, whether the plaintiff stands upon the undisputed failure of the defendant to perform the duty which the statute imposed upon him, or upon the unexplained falling of the scaffold, which he was bound to make safe, suitable, and proper, in either case the court was correct in saying that, when such a scaffold provided for an employé fell without any reason for its failure, that fact of itself was evidence of negligence upon which the jury might base a verdict that the defendant had not performed his duty. The court, therefore, made no error in refusing to charge as requested and in his explanation of the duty of the defendant, and the judgment and order appealed from should be affirmed, with costs.

PATTERSON, P. J., and HATCH, J., concur.

McLAUGHLIN, J. (dissenting). I am unable to concur in the conclusion reached by Mr. Justice RUMSEY in this case. The learned trial justice was requested by the defendant's counsel to charge "that the happening of the accident created no presumption of negligence on the part of the defendant, but the burden is upon the plaintiff to establish by a fair preponderance of credible testimony that the falling of this scaffold was due to the negligence of the defendant, and without any negligence on the part of the decedent which contributed thereto." The request was refused, and an exception taken. After the jury had retired, they sent the following communication to the court: "If it has not been shown by the evidence that the scaffold was defective, can the defendant be held liable by reason of its fall?" to which the court answered: "I have already charged you that the falling of this scaffold, unexplained, raises a presumption of negligence on the part of the employer, and that presumption would justify a finding on your part of negligence on the part of the employer." This, I think, was an erroneous instruction as to the law applicable to the facts, and for that reason the exception to the refusal to charge as requested was well taken. The falling of the scaffold, under the facts set out in this record, created no presumption whatever that the defendant was guilty of negligence; and, before the plaintiff could recover, he should have established, in addition to the fall of the scaffold, that the defendant had been guilty of some act, either of omission or commission, which resulted in the death of his intestate. It is uncontradicted that the scaffold was in the process of construction; and when the plaintiff's intestate went upon it it had not then been completed.

In the prevailing opinion stress is laid upon the fact that the scaffold was not constructed in accordance with the "Labor Law," so called (Laws 1897, c. 415, § 18), in that it would not sustain four times the maximum weight required to be put upon it when in use. Just what

application this statute has to a scaffold not completed, but in the process of construction, or how it can be resorted to for the purpose of sustaining the judgment, under the facts set out in this record, I am unable to see. Manifestly, it was intended that the statute should apply only to completed scaffolds, and not to those in process of construction.

The defendant was entitled to have the jury instructed as requested by its counsel, and for the refusal of the court to thus instruct them I think the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

INGRAHAM, J. I concur with Mr. Justice McLAUGHLIN. It is quite clear that in this case the only ground upon which the defendant could be held guilty of negligence was in directing or permitting his employés to use an incompleted scaffold, which, when used, was unsafe. The evidence is uncontradicted that at the time the scaffold fell it was incomplete, and there is no evidence to show that, if completed, it would not have been safe. The falling of such an incompleted scaffold was not of itself evidence of negligence on the part of the defendant. More was required. It was necessary to show that he directed or permitted his employés to use the scaffold in its unfinished condition. The negligence for which the defendant was liable, therefore, was not the improper construction of the scaffold, but the use to which it was put in its unfinished condition; and for that reason I do not think that the mere falling of the scaffold would create a presumption that the defendant was negligent. There was no direct evidence that Montague (the defendant's foreman) directed the deceased to work upon the scaffold before it was finished. There was evidence, however, from which the jury could infer that the defendant directed or permitted him to work there, and in that case would have been justified in a finding of negligence; and I think, therefore, that the defendant was entitled to have the jury instructed that the mere happening of the accident (fall of the scaffold) created no presumption of negligence on the part of the defendant. I do not think, however, that it can be said that a fall of a scaffold, without other evidence, would create a presumption of negligence. It might be evidence from which a jury could find negligence, but that is a very different proposition. There are some cases—like that of a common carrier of passengers— when the happening of an accident may create a presumption of negligence, but I do not understand that the duty of an employer to his employés rests upon the same principle. In such a case it is a question of evidence, and that there cannot be, from the happening of the accident, a presumption that the defendant was negligent. That the refusal to give this instruction was vital in the disposition of the case is shown by the subsequent charge, when the jury asked for further instruction, and the court told them that the falling of the scaffold, unexplained, raised a presumption of negligence on the part of the employé; and it was only after this explicit instruction that the jury found a verdict for the plaintiff. This, in effect, was a direction to find a verdict for the plaintiff. I think, therefore, that there should be a new trial.