### HOLLOWAY v. McWILLIAMS.

(Supreme Court, Appellate Division, Second Department.  October 14, 1904.)

1. MASTER AND SERVANT—DEFECTIVE SCAFFOLDS—LIABILITY OF MASTER.

The rule that a master who commits the details of the construction of a scaffold to his servants is not liable for their negligence in constructing the same, whereby a fellow servant is injured, has been changed by the labor law (Laws 1897, p. 461, c. 415), and under that law the master is liable for such injuries.

Woodward, J., dissenting.

Appeal from Trial Term, Richmond County.

Action by Charles H. Holloway, as administrator of August M. Holloway, deceased, against Frank McWilliams. From a judgment for defendant, and from an order denying a motion for a new trial, plaintiff appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Warren C. Van Slyke, for appellant.
William M. Mullen, for respondent.

PER CURIAM. This is a negligence suit, arising out of the death of the plaintiff's intestate while working for the defendant upon a scaffold in front of the bow of a scow in the defendant's shipyard. The complaint expressly charged the defendant with having negligently violated chapter 415, p. 461, of the Laws of 1897, commonly known as the "Labor Law." At the conclusion of the trial the case was left to the jury in a charge to which neither party took an exception, and the only questions presented by this appeal relate to the subsequent action of the trial judge in charging 16 requests presented by the defendant. Many of the instructions thus given to the jury involved the legal proposition that the duty of a master to his servants in such a case as this was fully performed by furnishing proper materials for the construction of the scaffold which broke, so that, where a master committed the details of the construction of the scaffold to his servants, and their negligence in carrying out those details resulted in injury to a fellow servant, the master was not chargeable. This was the rule sanctioned in Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017, and other authoritative decisions rendered before the enactment of the Labor Law. That

¶ 1. See Master and Servant, vol. 34, Cent. Dig. §§ 374, 397, 459.

statute, however, has changed the rule. This change has been distinctly recognized by the Appellate Division in the First Department and by the Court of Appeals in the case of Stewart v. Ferguson, 34 App. Div. 515, 54 N. Y. Supp. 615, on subsequent appeal, 52 App. Div. 317, 65 N. Y. Supp. 149, affirmed 164 N. Y. 553, 58 N. E. 662. The instructions given in response to the requests of the defendant were therefore highly misleading, and almost equivalent in effect to a direction to the jury to find against the plaintiff.

For this error we think the judgment should be reversed.

WOODWARD, J. (dissenting). I am unable to concur in the opinion about to be handed down by this court, which holds that it was error for the court at trial term to charge the following request:

"That if the jury is satisfied from all the evidence that the defendant furnished to the decedent and his fellow servants, for the performance of their labor, in working at the place of the accident, safe, suitable, and proper materials and scaffolding for their use in the performance of their work, that then, and in that event, plaintiff cannot recover, and the defendant is entitled to a verdict."

It is conceded that this is a correct statement of the defendant's liability as it would have existed prior to the enactment of the Labor Law, but it is held to be wholly incorrect under the new rule established by that act.

Section 18 of the Labor Law (Laws 1897, p. 467, c. 415), in so far as it has any bearing upon the questions here presented, reads as follows:

"A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged."

The fourth paragraph of section 19 of chapter 415, p. 468, of the Laws of 1897, to which attention is called, provides that:

"All swinging and stationary scaffolding shall be so constructed as to bear four times the maximum weight required to be dependent therefrom or placed thereon, when in use, and not more than four men shall be allowed upon any swinging scaffolding at one time."

This, read by itself, would seem to have some bearing upon the question, but when the whole section is brought into consideration it will be discovered that this paragraph simply furnishes a standard by which policemen in cities, called upon to inspect scaffolding, ropes, blocks, pulleys, and tackle, are to determine their duties, and does not pretend to add to the duties of the master as described in the previous section. Section 19, p. 467, provides that "whenever complaint is made to the commissioner of police, superintendent or other person in charge of the police force of a city, that the scaffolding or the slings, hangers, blocks, pulleys, stays, braces, ladders, irons or ropes of any swinging or stationary scaffolding used in the construction, alteration, repairing, painting, cleaning or pointing of buildings within the limits of such city, are unsafe," etc., such police commissioner or other person "shall immediately detail a competent police officer to inspect such scaffolding," etc.

It then provides that if, after such inspection, he finds the same to be
dangerous, he is to prohibit its use, and require the same to be altered
and reconstructed so as to avoid such danger. It then prescribes a no-
tice to be affixed to the scaffolding or other defective appliance, and
provides for serving a personal notice upon the party responsible for
such scaffolding, etc., and that "any officer detailed to examine or test
any scaffolding or part thereof, as required by this section, shall have
free access, at all reasonable hours, to any building or premises contain-
ing them or where they may be in use." Then follows the provision
above cited in reference to the maximum weight, which is clearly in-
tended to establish the foundation for the tests provided for in this
section. There is nothing to indicate that any complaint had ever been
made to the police commissioner or any other person having charge of
the police force of the city of New York, or of the borough of Rich-
mond, where this accident happened, in reference to this scaffolding.
As chapter 415, p. 461, of the Laws of 1897, undertakes to change the
common law, it is to be construed as intending to make only such
changes as are clearly set forth (Rosin v. Lidgerwood Manufacturing
Co., 89 App. Div. 245, 247, 86 N. Y. Supp. 49, and authority there cited),
and a construction of a statute should be avoided which would affect
injuriously the rights of others. That sense should be attached to its
provisions which will harmonize its objects with the preservation and
enjoyment of all existing rights. Suburban Rapid Transit Co. v.
Mayor, etc., of New York, 128 N. Y. 510, 523, 28 N. E. 525. A con-
struction of this statute requiring an arbitrary standard of strength,
not required by the common law or by the general experiences of man-
kind in providing a safe appliance or place to labor, not being neces-
sary, and such object not being within the legislative contemplation
(Matter of Board of Street Opening, etc., 133 N. Y. 329, 31 N. E. 102,
16 L. R. A. 180, 28 Am. St. Rep. 640), I am of opinion that it has no
bearing upon this case. It can find its legitimate scope and use in pro-
viding a standard by which policemen are to judge of their duty when
called into action in the manner prescribed by the statute, and this con-
struction is the more reasonable, because, if the Legislature had intend-
ed to prescribe this as the universal standard of duty on the part of the
master, it would naturally have found a place in section 18, in defining
what should constitute a safe scaffolding and appliances; that section
going quite into detail in respect to that question in a separate para-
graph. "Reason is the soul of law, and, when the reason of any partic-
ular law ceases, so does the law itself." Broom's Legal Maxims (4th
Ed.) 133, and examples, 134, 135. If we look into the provisions of this
statute, we shall find that the reason for this provision in section 19 of
the labor law was that, on complaint being made of the unsafety of any
scaffolding, etc., there would be a presumption that there was ground
for such complaint, and, there being no reason to expect that a police-
man would be skilled in matters of this character, a rule was laid down
for his guidance, which would place the question beyond a doubt. He
was to examine and test the scaffolding and appliances upon the theory
that they should be able to withstand four times the strain which would
be placed upon them while in use, and "if, after examination, such
officer finds such scaffolding or any of such parts to be dangerous to

life or limb, he shall prohibit the use thereof, and require the same to be altered and reconstructed so as to avoid such danger." It is likewise provided that after the officer has found the scaffolding unsafe, and has given notice to the person responsible for the same, such person shall "immediately remove such scaffolding or part thereof and alter or strengthen it in such a manner as to render it safe, in the discretion of the officer who has examined it, or his superiors"; thus indicating that the purpose of the statute was to secure safety, not an arbitrary standard of resistance, for which there could be no reason other than that which we have suggested. For the purpose of making the examination and test of the scaffolding and appliances by a policeman, he was to require a standard of four-fold strength; that is, if there was any doubt about the matter, it was the policeman's duty to be absolutely certain. But when this examination had been made, and the responsible party had been notified, the latter was required to "alter or strengthen it in such a manner as to render it safe, in the discretion of the officer who has examined it, or of his superiors." These provisions are entirely inconsistent with the provisions of the last paragraph of the section, requiring the fourfold strength, as well as the provisions of section 18 of the same act, which merely requires that the person employing or directing another to perform labor of any kind upon a house, building, or structure "shall not furnish or erect, or cause to be furnished or erected, for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged," which has been repeatedly recognized as presenting a question of fact, upon the evidence, for the jury. Stewart v. Ferguson, 34 App. Div. 515, 520, 54 N. Y. Supp. 615; McLaughlin v. Eidlitz, 50 App. Div. 518, 521, 61 N. Y. Supp. 193; Stewart v. Ferguson, 52 App. Div. 317, 319, 65 N. Y. Supp. 149; s. c., 164 N. Y. 553, 556, 58 N. E. 662. This court is not compelled—indeed, it is not permitted—to give absolute and unqualified effect to a single section or clause of a statute, however direct, plain, and unambiguous, considered by itself alone, the language may be, if there are other provisions inconsistent with a literal and unrestricted interpretation of such clause or section, unless the repugnancy is irreconcilable, in which case it is the duty of the court to preserve the paramount intention, so far as it is consistent with the rules of law, although this may lead to the rejection of some subordinate and secondary provision. Taggart v. Murray, 53 N. Y. 233. But fortunately it does not very frequently happen that a statute is incapable of a construction which will give some effect to all its parts. The primary purpose of interpretation is to ascertain the intent of the lawmakers, and in statutes, as in other instruments, clauses in themselves absolute and unqualified may be limited by other clauses and provisions. The whole context of a statute may be examined to ascertain the meaning of a particular clause; and this becomes necessary where the meaning is doubtful, or where, by giving a particular clause full effect, it would come in conflict with other clauses. A statute, like a will or a contract, is to be construed as a whole, and in applying this principle of construction it is not material in what

order provisions which at first blush appear contradictory are placed. The meaning is to be collected ex antecedentibus et consequentibus, and a later provision may be qualified by a prior one, or the contrary. People ex rel. Mason v. McClave, 99 N. Y. 83, 89, 1 N. E. 235; People ex rel. Huntington v. Crennan, 141 N. Y. 239, 244, 36 N. E. 187, and authorities there cited. Applying these rules to the last clause of section 19 of the Labor Law, and limiting it to the rule or standard to be applied by policemen in making tests where they are called into action in the proper way, we give force to the previous provisions of the same section, which permit the proper person to make alterations and to strengthen the scaffolding "in such a manner as to render it safe, in the discretion of the officer who has examined it, or of his superiors." Construed to require an absolute standard of strength, for which there can be no good reason, under all circumstances, the discretionary power in the police department is without force or effect, and there is no question for the jury under section 18 if it is once shown that the platform fell under a less burden than four times its normal requirement, no matter what degree of care and experience was involved in the construction of the scaffolding. There is no warrant for this construction, which thus practically makes the master an insurer of the safety of the platform or scaffolding, and which nullifies important provisions of the same act, and particularly so when the main purpose—that of securing the responsibility of the master for the safety of his employés within the rule of reasonable care to provide safe places for them to perform their labor—may be fully accomplished under a construction which gives effect to all of the provisions of the law.

I am aware that in Stewart v. Ferguson, 52 App. Div. 317, 65 N. Y. Supp. 149, a divided court, in discussing this provision of section 19 of the Labor Law, declared that "this establishes a criterion of the safety of a scaffold to which it is the duty of the master to conform; and, if it appears that a scaffold which he has erected for the use of his employés does not possess the strength which the statute requires, the master clearly fails to do the duty towards his employé which the statute has imposed upon him"; and that the Court of Appeals, in affirming the same case (164 N. Y. 553, 556, 58 N. E. 662), incidentally accepts this view of the law, without taking into view the whole of the section, or at least without setting out more than this single clause of the section. But this was not necessary to the determination of the question before the court, and if, as sometimes happens, broader statements are made by way of argument or otherwise than are essential to the decision of the questions presented, they are the dicta of the writer of the opinion, and not the decision of the court. A judicial opinion, like evidence, is only binding so far as it is relevant; and when it wanders from the point at issue it no longer has force as an official utterance. Roberson v. Rochester Folding Box Co., 171 N. Y. 538, 551, 64 N. E. 442, 59 L. R. A. 478, 89 Am. St. Rep. 828, and authority there cited. In the Stewart Case, supra, the court had charged the jury, without exception, that under this statute the duty devolved upon the defendant to exercise reasonable care and precaution to furnish a safe scaffold for his workmen, and that the first question for them to determine was whether the defendant used proper care and reasonable precautions in furnishing

the scaffold, and, if they found that he did, their deliberations were to cease there, and they were to find a verdict for the defendant. Stewart v. Ferguson, 52 App. Div. 317, 319–320, 65 N. Y. Supp. 149. This undoubtedly stated the law, and the only question in the case arose from the refusal of the court to charge at the request of the defendant "that the happening of the accident created no presumption of negligence on the part of the defendant, but the burden is upon the plaintiff to establish by a fair preponderance of credible testimony that the falling of this scaffold was due to the negligence of the defendant, and without any negligence on the part of the decedent which contributed thereto." Stewart v. Ferguson, 52 App. Div. 320, 65 N. Y. Supp. 151. This being the only question involved in the appeal, the mere fact that the Appellate Division saw fit to introduce this single clause of section 19 into the argument, and that the Court of Appeals incidentally accepted that view of the statute, does not prevent this court from considering the real intention of the Legislature, unless the decision depended upon this clause of the statute, and this question was actually determined by the court. On the final review (52 App. Div. 317, 321, 65 N. Y. Supp. 149, 152) it is conceded that, "even without resorting to the statute, upon the undisputed facts in this case, the refusal to charge as requested and the explanation of the refusal were correct." This view is amply justified by the authorities cited in its support. In the case of Solarz v. Manhattan R. Co., 8 Misc. Rep. 656, 29 N. Y. Supp. 1123, it appeared that the defendant had furnished a scaffold upon which the plaintiff was called upon to work; that when he went upon it it fell, without any reason, so far as appears; and the court held and charged the jury that the unexplained breaking down of the scaffold made out a case sufficiently strong to go to the jury. This case was affirmed (11 Misc. Rep. 715, 32 N. Y. Supp. 1149, and again in 155 N. Y. 645, 49 N. E. 1104), so that the law was well established that the defendant was not entitled to the charge as requested, and the subsequent declaration of the court that the falling of the scaffold, unexplained, raised a presumption of negligence on the part of the employer, who owed the duty of not furnishing a scaffold which was "unsafe, unsuitable, or improper," was entirely proper, and the rule was in no wise changed by the provisions of section 19 of the Labor Law. The falling of a scaffolding provided by the master under a statutory provision that such scaffolding should not be "unsafe, unsuitable, or improper," where such fall was unexplained, raised the same presumption of negligence in its construction which would be raised under the same circumstances if the statute required that the scaffolding should be able to withstand four times the normal strain. There was a positive duty, if the master furnished a scaffolding on which the servant was called upon to labor, to furnish a safe, suitable, and proper one; and the fact that the scaffolding, while being used for the purposes for which it was constructed, fell, would, without explanation, afford a prima facie case against the master. It would raise a presumption of negligence in the construction of the scaffolding, and this presumption would not be increased if the statute established an arbitrary standard of strength. If I am right in this proposition, it follows that it was not necessary in Stewart v. Ferguson, 52 App. Div. 317, 65 N. Y. Supp. 149, affirmed 164 N. Y.

553, 58 N. E. 662, to determine the relations of this clause of section 19 to the provisions of section 18 of the Labor Law, and we are at liberty to determine this question in its relation to the charge of the learned court in the case at bar.

It has been suggested, however, that while the question of the effect of section 19 of the Labor Law was not necessarily involved in the Ferguson Case, supra, the Court of Appeals has since had the question under consideration, and has determined the question finally; but I am unable to discover any such necessary result from its recent opinion in the case of Jenks v. Thompson, 179 N. Y. 20, 71 N. E. 266. On the contrary, that case appears to me to support the view which I have taken of the Labor Law, in so far as it has any bearing upon the question. Upon the trial of that action the plaintiff offered evidence of men who had had long experience in carpenter work, and who were shown to be familiar with the construction of scaffolds, bearing upon the question of whether the scaffold, as constructed and afforded to the plaintiff for the purpose of enabling him to perform his work, was a safe, suitable, or proper scaffold; and the exclusion of such evidence on the ground that it was immaterial and irrelevant was held to constitute reversible error. This necessarily held that the question of whether a scaffolding was safe, suitable, and proper was a question for the jury, under the provisions of section 18 of the Labor Law; and, if it is a question for the jury, which may be determined upon expert evidence, where the injury results from an alleged springing of the boards constituting the platform of such scaffolding, it seems to me that it presents equally a question of fact where the injury results from the breaking of such boards. The rule laid down by this section is that the employer shall not furnish or "cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged." If a question of fact in reference to the scaffolding is for the jury in one case, it is equally proper in another; and the Jenks Case, supra, seems to hold that it is a question which may be determined by expert evidence. It is difficult to understand, if a master has provided scaffoldings, etc., which are not "unsafe, unsuitable, or improper," how he can, under a system which guaranties the equal protection of the laws, be compelled to have a scaffolding which is able to bear four times the weight ordinarily to be suspended upon such scaffolding, while the employé is only called upon to exercise that reasonable degree of care which the circumstances seem to demand as a condition of his recovery. Why should the employer not only be called upon to provide scaffoldings, etc., which are not unsafe, unsuitable, or improper, but scaffoldings which can, by no possibility, break down under the load to be placed upon them, while the employé is only held to reasonable care? Is there any good reason for this discrimination? Does a fair reading of the entire statute demand such discrimination? Is it right and proper, when the master has exercised that degree of care which a reasonably prudent man should exercise in preserving his own life and limb, and has provided a platform which men of experience regard as not unsafe, unsuitable, or

improper, he should be held to answer for an accident which results from defects that could not upon a reasonable inspection be discovered? If it is not right or just, do the letter and the spirit of the statute compel us to accept this construction? I do not think that the Legislature intended anything more than that the employer should be held responsible for a lack of reasonable care in the construction of such scaffoldings. It was made the duty of the master, rather than of the servant, to furnish the scaffoldings and the appliances, and thus relieved the employé of the risks incident to the negligence of fellow servants; and this is entirely consistent with the provisions of section 18. Section 19 had an entirely different purpose to serve. It does not pretend to deal with scaffoldings generally throughout the state, and it has, in my judgment, no relation whatever to an action for negligence against an employer.

The learned court in Stewart v. Ferguson, 52 App. Div. 317, 65 N. Y. Supp. 149, suggests that this court has adopted its interpretation of the statute as laid down in the previous discussions of the same case in McAllister v. Ferguson, 50 App. Div. 529, 64 N. Y. Supp. 197, and in McLaughlin v. Eidlitz, 50 App. Div. 518, 64 N. Y. Supp. 193; and this is perfectly correct in so far as the question relates to the provisions of section 18 of the Labor Law, which was the only portion of the statute under review in these cases. In the McLaughlin Case, supra, we adopted the view of the First Department that "the obligation imposed by the statute resting upon the master is absolute to furnish safe and suitable scaffolding, hoists, stays, ladders, and other mechanical contrivances for the use of its employés. The duty thus to furnish being absolute, the obligation is at all times made the act of the master, which he may not delegate to another, and from which he may not shelter himself from responsibility if the structure be in fact unsuitable and unsafe; the rule in this respect being to make the measure of obligation of the master such as is laid down in Crispin v. Babbitt, 81 N. Y. 516, 37 Am. Rep. 521." This gives to section 18 of the Labor Law as broad an interpretation as it is capable of under any reasonable rule, and marks the limit to which this court is committed in respect to the construction to be put upon this statute. It is absurd to say that there is an absolute duty imposed upon the master to furnish a safe, suitable, and proper scaffold, which all of these cases recognize as presenting a question of fact to be determined by the jury; and then to say that such safe, suitable, and proper scaffolding can only meet the requirements of the statute by conforming to an arbitrary standard of strength. It takes from the jury the question of whether the scaffolding was a safe, suitable, and proper one, and makes the employer practically an insurer of the absolute safety of such scaffolding, although he may have exercised all of the care and foresight of which the human mind is capable, for it could never be that a scaffolding, every board, rope, hook, or other appliance of which was capable of withstanding four times the strain to be put upon it when in use, would ever fall, in the absence of some great violence applied to such appliances. This is not the law, for it has been well said in Stewart v. Ferguson, 34 App. Div. 515, 520, 54 N. Y. Supp. 615, 619, that "the rule which now exists with regard to the building of scaffolds is that it is a personal duty of the master to use

reasonable care to see that the scaffold furnished is not unsafe, but is safe and proper for the use for which it is intended." See, also, Mc-Laughlin v. Eidlitz, 50 App. Div. 518, 522, 64 N. Y. Supp. 193; Stewart v. Ferguson, 164 N. Y. 553, 555, 58 N. E. 662. To require one to use reasonable care that a scaffolding should be safe, and then to impose the condition that such scaffolding and all of its appliances should be capable of sustaining "four times the maximum weight required to be dependent therefrom or placed thereon when in use," is to reduce the statute to an absurdity, for the amount of weight required to be sustained when in use is the amount which is placed upon it when the fall occurs. If it was capable of standing four times that weight, it could not possibly fall when in use, unless some one should actively interfere to cut the ropes or to knock out the stays, in which event there would be no question to be considered as between the master and the servant.

Statutes should be construed, if possible, so as to avoid absurdity and manifest injustice. People v. Buffalo Fish Co., 164 N. Y. 93, 97, 58 N. E. 34, 52 L. R. A. 803, 79 Am. St. Rep. 622, and authority there cited. Clearly, it would be both absurd and unjust to construe this statute so as to compel even the most prudent and painstaking employer to become liable, if, through latent and undiscoverable defects, a scaffolding, constructed with every precaution which intelligent care could suggest, happened to fall while workmen were engaged upon it. It is the duty of the courts to construe statutes so that they may be rendered practicable, just, and reasonable (People v. Buffalo Fish Co., 164 N. Y. 97, 58 N. E. 34, 52 L. R. A. 803, 79 Am. St. Rep. 622), and this result is accomplished by reading section 18 of the Labor Law as providing the master's duty of using reasonable care in the erection of scaffolds to make them safe, suitable, and proper; while section 19 is held to relate only to the standard to be adopted by policemen in their inspections, that there may be no failure to secure the safety of employés where there is any question upon this score. This gives effect to every part of the statute, makes it harmonious, reasonable, and just in its administration. It leaves the question of defendant's negligence to be determined by the jury upon the evidence in the case upon the basis of that reasonable degree of care which the law ever exacts; while the rule contended for by the plaintiff makes the statute harsh and arbitrary, deprives several of its provisions of effect, and works gross injustice, where the defendant has not, in fact, neglected any duty which he owes to the plaintiff. Section 19 of the Labor Law is devoted to the "inspection of scaffolding, ropes, blocks, pulleys and tackle in cities." It has no relation to scaffoldings and their appliances in the state generally outside of cities, and it cannot, therefore, be read or construed as providing a standard of strength for the scaffoldings mentioned in section 18, which is general in its application to all parts of the state. Section 19 is a special provision relating to police supervision in cities, in aid of the high policy of the state to preserve human life, independently of the liability of the master for negligence in respect to his employés, and it should be confined in its operation to this clear intention of the Legislature.

If we are right in this construction of the statute, the questions raised by the plaintiff's exceptions to the granting of defendant's requests to

charge are very much simplified. There is no dispute in the evidence that the defendant, through his servants, constructed a scaffolding in and about the bow of a certain scow in course of construction in his shipyard at West New Brighton, Staten Island, a day or two before the 10th day of December, 1902, and that on the date last above mentioned plaintiff's intestate was sent to work upon such scaffolding. This scaffolding was constructed by placing two "horses" about 15 feet apart on the outside of the scow, with two similar "horses" inside of the same. Two spruce planks, 3 inches thick and 10 inches wide, were placed upon these "horses" inside and outside the scow, and upon these stringers were placed two spruce planks of like dimensions, side by side, and alongside of these two planks were placed two other spruce planks 10 inches wide and 2 inches thick—these latter being laid one on top of the other—so that the platform as thus constructed was 30 inches wide, 20 inches of the same being made of 3-inch planks and 10 inches of 2-inch planks. The span between the stringers placed upon the "horses" was from 15 to 18 feet, the latter being the most probable. This was the place provided for the plaintiff's intestate to work, and, the construction of this platform having been undertaken by the master, it was the duty of the latter to use reasonable care to know that it was not an unsafe, unsuitable, or improper place for the deceased to work. Section 18, Labor Law. Holloway, the plaintiff's intestate, went to work upon this platform on the morning of December 10, 1902. The platform at that time was about 15 feet above the ground, and the work under way was the spiking of 3-inch yellow pine planks to the framework of the scow. They were at work upon the bow. The pine planks being used were something over 20 feet in length, and, in order to conform them to the curve of the bow, it was necessary to spring these heavy planks about 21 inches from a straight line. They commenced at the top, and when each new plank was brought up it was spiked near the center, and was then conformed to the curve, in the meantime being pressed up and against the plank above it, so that the joints should be as nearly perfect as possible. The defendant had provided for this purpose a chain with a large hook and crowbar. The hook was placed over the edge of the top plank and the chain dropped down over the outside of the plank. The crowbar was inserted in the link just below the plank which was being adjusted, the end of the bar being placed under the edge of such plank, and by pressing down upon the other end of the bar the leverage thus secured operated to force the plank into position, and to hold it while the necessary spikes were driven to hold it. This was an approved method of doing the work, and it is right here that the only material dispute in the evidence occurs. The plaintiff's theory is that the workmen were employing this or another method, which involved the use of a dog—but this method is not described in the evidence—and that the accident occurred while thus properly engaged in the work. The defendant, on the contrary, produced evidence to show that two minutes before the happening of the accident the men were at work placing one of the pine planks, and that, instead of using the chain and bar, they were bracing upward and against the plank with their shoulders; the inference being that this added pressure of their upward bracing, diametrically opposite

to the result which would have been produced by the use of the bar, threw such a weight upon the single plank of the scaffolding which broke that it was called upon to sustain a strain which it was not reasonable to anticipate from the work to be performed, and we are of opinion that the evidence was such as to justify this inference.

But the accident did not occur while Holloway was at work upon the platform which the defendant had erected. He worked upon the scaffolding above described until about 10:30 a. m. of the day of the accident, when it became necessary to lower the platform. Holloway, with the three other men who were engaged in the work, took down the original platform, lowered the "horses" three or four feet, and reconstructed the scaffolding upon the same general plan as that which had previously been in use, except that in placing the planks for the platform one of the 3x10 spruce planks was discarded (for what reason does not appear), so that the platform on which Holloway and his fellow employés resumed work a little before 1 o'clock of that afternoon was only 20 inches wide, one-half of that space being 3 inches thick, and the other half, made of the two 2x10 planks placed on top of each other, being 4 inches thick, so that under the defendant's theory the tendency would be to throw all of the weight upon one of these plank sections, for the surface would be too uneven to afford a firm footing for men who were engaged in a bracing lift, such as is described in the evidence, if the weight was distributed over the two sections. Indeed, the evidence is sufficient to support the finding of the jury that these four men, who had reconstructed this scaffolding, and who had voluntarily discarded one of the 3x10 planks, were all standing upon this one 3x10 plank, engaged in forcing the heavy pine planks into position to be spiked when the accident occurred. The evidence was not disputed that the plank was in good condition; that it showed no defects; and the testimony shows that a similar plank, in no respect superior to the one which broke, sustained the weight of eight men as heavy as those upon the platform, with an equal distance between the supports. The evidence is practically irresistible that, had the strain been applied to the two 3x10 planks originally in the scaffolding, or had the plaintiff's intestate and his fellow employés been using the contrivance of chain and bar, the accident could not have occurred. The question of the absence of contributory negligence on the part of Holloway was thus clearly for the jury to determine. He not only made use of the scaffolding with a full opportunity to know of its defects, but he actually took part in its construction, and acquiesced in the discarding of one of the planks which the master had provided, and which he had evidenced as necessary to the safety of the structure by originally using. McLaughlin v. Eidlitz, 50 App. Div. 518, 522, 64 N. Y. Supp. 193.

But the plaintiff's theory is that under the provision of section 18 of the Labor Law, which provides for scaffolds that "are so constructed, placed and operated, as to give proper protection to the life and limb of persons so employed or engaged," it was the duty of the master to superintend and direct the removal and reconstruction of the scaffolding, so that it should remain absolutely safe under all circumstances; that the master should assume this burden even as against the negligence of the plaintiff's intestate; and this is the controlling idea in all of the ex-

·ceptions to which our attention is directed on this appeal. This, it seems to us, is wholly untenable. The effect of the provisions of the Labor Law is not to relieve the injured employé from his own negligence in respect to the scaffolding, but to relieve him from the negligence of his fellow servants. With respect to the construction and operation of the scaffolding the fellow servants are discharging a duty of the master, who becomes responsible for their negligence (Stewart v. Ferguson, 52 App. Div. 317, 319, 65 N. Y. Supp. 149); but in the case at bar, if the master had been actually present, and had engaged with Holloway in the reconstruction of this scaffolding, and the latter had entered upon the same knowing that the second plank had been discarded, a question would be presented for the jury to determine whether the plaintiff's intestate had been negligent in so doing (McLaughlin v. Eidlitz, supra). The same duty rests upon the plaintiff to show the exercise of reasonable care on the part of the intestate that is required in showing the lack of such reasonable care on the part of the defendant. No reason is suggested why Holloway, who had worked around shipyards for some years, was not as well qualified to judge of the safety of this scaffolding, which he had assisted in erecting, as the master could have been if he had been present and engaged in the discharge of his duty to use reasonable care to provide a safe scaffolding. The plank which broke was not defective. It was in condition to withstand any strain which similar planks might fairly have been expected to sustain; and if the plaintiff's intestate assisted in making a platform which necessarily threw all of the weight upon a single plank, he was as well aware of the danger of such an act as the master. If he voluntarily went upon such platform, and subjected it to a strain which it was not required to bear in the ordinary and approved method of performing the work, it was for the jury to say whether the plaintiff had sustained the burden of proving that the intestate was free from negligence contributing to the accident. We are clearly of opinion that he had not, and that the verdict of the jury was amply justified.

The evidence of men who had had long experience in the construction of similar scaffolds, and who were familiar with the relative strength of timber, was overwhelming that the materials furnished were proper, and that the scaffold furnished by the defendant was safe and proper for the work then under way when performed in the usual and approved way; and, unless there was an absolute duty on the part of the master to provide a platform which would stand a four-fold strain, the jury could not properly have reached any other conclusion than the one which we are now asked to reverse because of the alleged errors in the charge of the learned trial justice in acquiescing in the defendant's numerous requests to charge.

It has been held that:

"While the statute does not make the master a guarantor of the safety of the scaffold, yet the construction of it is his personal duty, as distinguished from the duty of the servant; and that the master is bound to use reasonable care to see that the scaffold furnished is not unsafe, but is safe and proper for the use for which it is intended; and that he cannot delegate that duty to another and relieve himself from responsibility merely by reason of the fact that he has selected a person of approved skill and fitness, and has furnished him with the material with which to do the work; but that, al-

though that has been done, yet, if the scaffold, is not suitable or safe or proper, the negligence, if any, in so building it is the negligence of the master." Stewart v. Ferguson, 52 App. Div. 317, 319, 65 N. Y. Supp. 149, 151.

But it is nowhere suggested, with authority, that the master's duty in this respect is so absolute as to entitle one who has participated in the negligence resulting in the injury to recover in spite of that fact (see McLaughlin v. Eidlitz, 50 App. Div. 522, 64 N. Y. Supp. 193), and, unless this doctrine can be sustained under the provisions of section 19 of the Labor Law, there is no reason why the plaintiff should complain at the instructions which were given the jury in this case, for the learned trial justice, at the request of plaintiff, and at the close of defendant's request which had been charged, placed the matter in as favorable a light as there was any possible justification for in the statute. Plaintiff's attorney said: "I have one request. I think you have already covered them in your main charge, namely, that the deceased had a right to rely upon the fact that the master was bound under the statute to furnish him an absolutely safe and proper place." To this the court responded, "I said so in so many words." This was certainly stating the law too strongly, for, as we have already suggested, in the light of authority the duty of the master is to use reasonable care to furnish a safe and proper place, not to furnish an absolutely safe and proper place, to be determined after the happening of the accident.

The first of the alleged errors in the charge of the court relates to the sixth request to charge. This request was that:

"If the jury is satisfied from all the evidence that the defendant furnished to the decedent and his fellow servants for the performance of their labor in working at the place of the accident safe, suitable, and proper materials and scaffolding for their use in the performance of their work, that then, and in that event, plaintiff cannot recover, and the defendant is entitled to a verdict."

To this the court responded: "That I charge. That brings in the word 'scaffolding.'" The plaintiff excepted, and now urges that "the. charge eliminated all questions of operation, destroyed the benefit of the presumption that the plank broke because of too great weight in the center, and took away from the consideration of the jury the question whether the scaffold was so constructed as to bear 2,400 pounds, or four times the weight of the four men, the statutory criterion as to the strength of the scaffold, and limited the master's duty to the mere furnishing of safe, proper, and suitable materials." As we have already pointed out, there is no statutory criterion of strength prescribed for . the scaffolds referred to in section 18 of the Labor Law, and the request to charge not only specified the materials, but the scaffolding, and there is no reason for believing, in view of the qualifying remark of the court, that the jury were left with the impression that "scaffolding" meant only the materials for building the scaffold. . The language of. the statute is, "shall not furnish or erect, or cause to be furnished or erected, for the performance of such labor, scaffolding," etc., "which are unsafe, unsuitable or improper." The main charge had dealt very fully with this question, so that when the court suggested that this request included scaffolding it is very clear that the jury did not have reason to believe that there was any modification of the previous very clear statement of the law in reference to this question.

In so far as the "operation" of the scaffolding is concerned, the contention of the plaintiff that this related to the lowering and reconstructing of the same is decidedly strained.   The word "operation" undoubtedly referred to the various mechanical contrivances made use of in suspending scaffoldings, including blocks, pulleys, ropes, stays, etc., and was intended to make the master liable for the manner in which such contrivances met the requirements of safe and proper appliances, and had no relation whatever to the simple reconstruction of a scaffolding made necessary by the progress of the work.   The duty of the master in reference to the furnishing or erecting of scaffolding is all covered by the previous clause.   While it is probably true that a fair construction of section 18 of the Labor Law would permit the plaintiff to recover where the negligence in the reconstruction of the scaffolding was that of fellow servants, it does not operate to make the master liable where the negligence of fellow servants is participated in by the plaintiff's intestate, as clearly appears to have been the case in the matter now before us.   In other words, the master is not liable in this or in any other case, within any rule of law with which we are familiar, for an accident which occurs through the concurring negligence of the person injured.   The statutes have not yet imposed such an injustice, and it is clearly the duty of the courts to refrain from extending the scope of statutory law beyond the point which the Legislature is willing, by clear and unambiguous language, to designate.

The remaining criticisms of the requests to charge are all based upon equally forced constructions, or upon the theory that the master was in duty bound to provide a scaffolding which was capable of withstanding a fourfold strain, instead of being merely liable for a failure to exercise reasonable care to provide a safe scaffolding.   I am clear that the plaintiff's theory is wrong, and that the charge as finally completed to the jury was a correct statement of the law of this case, in so far as any rights of the plaintiff are involved; and the defendant does not raise any questions.

The exceptions to the reception of evidence were not well taken. The plaintiff had the advantage of the same class of evidence as that which he sought to have rejected, and under the authorities we see no reason why the testimony was not proper.   Men who had had long experience in the construction of similar scaffolding, who were familiar with the timber used, and who knew its relative strength, were entitled to testify as to their opinions of the safety of a scaffolding constructed in the manner set out in the evidence.   Jenks v. Thompson, 83 App Div. 343, 345, 82 N. Y. Supp. 274; s. c. 179 N. Y. 20, 71 N. E. 266.

The judgment and order appealed from should be affirmed, with costs.